GOTLIEB KILLINGER ET AL., PLAINTIFFS AND APPEL-
LANTS, V. JOHN GEORGE HARTMAN, DEFENDANT
AND APPELLEE.

**Trusts:** PETITION FOR ACCOUNTING: SUPPLEMENTAL PETITION.
The grantee in a deed from a grantor who had received.a con-
veyance from a trustee, filed a bill to require the trustee to ac-
count, and to have him removed; and subsequently, having
purchased in certain general interests in. the trust, asked leave
to set up the same by supplemental petition; *Held*, 1. That
having shown no interest in the trust in the original petition,
he could not aid the same by a supplemental petition; and, 2.
That having no interest in the trust at the commencement of
the suit, he could not maintain the action.

APPEAL from the district court of Douglas county.
Tried below before WAKELEY, J.

*E. W. Simeral* and *George W. Doane*, for appellants.

*Congdon, Clarkson & Hunt*, and for appellee.

COBB, J.

This case comes to this court on appeal from the district
court of Douglas county.   As it is an important, as well
as a peculiar case, I copy the pleadings at length.

The plaintiffs in and by their petition allege:

"That on May 10, 1857, a society was organized and incorporated in the city of Dubuque, Iowa, known as the 'Homestead Society of Dubuque, Iowa,' and which was formed for the purpose of buying real estate to be divided among the members for homes; that the plaintiffs are members and shareholders of said society, and that they or those from whom they derived their rights were each original members of said society; that in pursuance of the purpose of said organization, purchases were made of two tracts of land near Omaha, described in the petition, which were conveyed by the grantor to John George Hartman, 'in trust for the use and benefit of the shareholders in the Homestead Society of Dubuque, and by the said Hartman to be conveyed in lots or parcels in severalty to each member of said society, his heirs, or assigns, who were entitled thereto, according to his several interest in said premises; that said deeds were duly recorded; that Hartman took possession for and in behalf of said shareholders, and undertook to administer said trust; that in order to do so the more conveniently, he laid out said land into an addition to Omaha known as 'Hartman's Addition,' a plat of which was duly signed and acknowledged by him and recorded in the records of deeds of Douglas county, and a copy of which plat is attached to the petition as 'Exhibit A'; that said addition was so laid out into 84 lots; that that the larger number of said lots were allotted and deeded by defendant to the members of said society, or their assigns, but that a number of them have never been allotted to any of the members, but still remain in the possession of said defendant as trustee; a list of twelve of which lots so remaining unallotted is given in the petition by numbers; that in addition to the lots, a portion of the land, containing about seven acres, was left undivided, and was laid out on said plat and designated as 'Hartman's Reserve,' and which still remains in defendant's possession; that said seven acres have been used and occupied by de-

fendant, upon which he has had a house erected and a fence placed around it, and has cultivated and used it as a garden for a number of years for his own use and benefit, which was of the rental value of at least $10 per acre for each year; that during a portion of the time the defendant leased the land, and derived large profits therefrom; that a large number of the lots in said addition have been deeded by defendant to persons who were not members of said 'Homestead Society,' in fraud of his trust, and for the purpose and with the intention of cheating and defrauding the society, and the shareholders thereof, out of their just rights; that by fraud and misrepresentation he induced a number of the shareholders to deed to him their interest in that portion of said addition designated as 'Hartman's Reserve,' which was done without consideration and through fraud of said defendant as such trustee, and that said tract of land is now held by him in fraud of the rights of the members of said society; that large sums of money have at various times come into the hands of said defendant as such trustee, arising out of said trust property, the amount of which, and the times when received, plaintiffs are unable to state; that defendant has not faithfully discharged his trust, in that he has not accounted for or paid over to the shareholders of said society, or to plaintiffs, any of the money received by him as such trustee; that he has conveyed a number of said lots to persons of his own family and others not entitled thereto, said persons not being members of said society; that he has used and occupied said seven acres called 'Hartman's Reserve' for several years, and now claims to own the same, and to exclude plaintiffs and all other shareholders in said society from participation therein, and has refused and still refuses to make deeds to shareholders entitled thereto, and has abused his trust by obtaining from shareholders conveyances of their interest in said reserve of seven acres.

" Prays that defendant be required to render an account

of his trust, showing amount received by him in money or property as trustee, and the manner the same has been disposed of, and the income derived therefrom and payments made on account of his trust, with dates, etc., and also of all other matters arising out of said trusteeship; that he be adjudged to pay to the shareholders all monies which of right belongs to them or any of them, and that he be removed from said trust, and that some fit and suitable person be appointed in his stead, to whom defendant shall turn over all monies and other property in his hands belonging to said society, and make deeds to all lands still remaining in his hands as trustee, and that in the meantime, and until final hearing, he be enjoined from conveying, disposing of or in way intermeddling with said property, and for general relief."

And on the 14th day of February, 1881, the defendant filed his answer, setting up his defenses as follows:

"1st.    General denial except as to admissions subsequently made.

"2d.    While 'denying right of plaintiffs to bring and maintain this action for the reason that they have not the rights or interests claimed by them in the trust, the defendant having performed towards all of them the duties resting upon him as such trustee, and all of said parties or their assignors or grantors having selected and had allotted and deeded to them lots in said Hartman's Addition and all having quit-claimed their interest in the seven acres reserve mentioned in said petition, nevertheless for the purpose of fully answering said petition, and to terminate said trust if the court has jurisdiction and power in this action so as to say,' as follows:

"Admits incorporation of 'Homestead Society,' of which a copy of articles is attached to answer marked 'Exhibit A'; that 83 shares of stock were issued and that corporation dissolved on the 28th day of May, 1860, by the terms of its articles of incorporation; that certain conveyances had

been made to the Homestead Society of real estate near Omaha, the title to which had failed, and thereupon the defendant was given the power of attorney by the proper officers of the society, on September 8, 1858, authorizing him to act for said society, and to take such legal steps as might be necessary to secure the rights of the society, which power of attorney was duly recorded; that acting thereunder he expended much time and labor in endeavoring to adjust the matters in controversy between said society and the grantors in said deeds, etc.; that failing in that he began suit against them in the district court of Douglas county, and after many years of vexatious trouble and litigation, the same was in January, 1867, finally settled, the said defendant as trustee for shareholders in said society taking conveyances for certain lands in lieu of those the title to which had failed, and which lands so received constitute what is now 'Hartman's Addition to the City of Omaha,' all of which was ratified by the holders of shares in said Homestead Society. That the defendant expended of his own moneys in the prosecution and maintenance of said action prior to January 1, 1860, certain sums, to-wit:

For court costs, $28.00, which, with interest
     from Jan. 1st, 1860, to Jan. 1st, 1881,
     makes due thereon ....................... $   71.30
Attorneys' fees to five different attorneys, $617.70,
     which, with interest at 10 per cent from
     Jan. 1, 1860, to Jan. 1, 1881, makes
     due on that item........................... 1914.80

"That the words of the trust expressed in the deeds to defendant are as follows: 'In trust for the use and benefit of and by the said J. George Hartman, to be conveyed to the members of the Homestead Society at Dubuque, in the state of Iowa, in the proportions and according to the several interests in and to said premises to which said members are severally entitled.'

"That defendant took possession of the lands as alleged in petition, and entered upon the trust. The trust existed in favor of parties whose interests were measured by eighty-three shares of stock, which constituted all the shares issued. That by reason of defendant's services rendered from 1858 until 1867, the holders of shares awarded to him a parcel of land in said addition 410 feet east and west by 680 feet north and south, being the seven acres reserve mentioned in the petition. That defendant reserved the seven acres accordingly and divided the remainder into 84 lots, which constituted Hartman's Addition. That to equalize values, the lots were made of different sizes according to location. That he awarded and deeded said lots to the shareholders, one lot for each share, as the same were selected by them, and in the order of their demands for deeds. That he has up to date awarded and deeded such lots at such times, etc., as shown by 'Memorandum of lots,' etc., attached to and made part of answer as 'Exhibit B.' That all of these acts of his were done under the instruction and with the acquiescence of the shareholders. That prior to January 1, 1868, he expended of his own moneys for the benefit of the shareholders for drawing and printing deeds, $62.00, which with interest at 10 per cent to January 1, 1881, makes due deft. thereon $114.00. That prior to January 1, 1871, he published notices in newspapers in different states notifying shareholders of their interests, etc., for which he expended $18.00, which with interest at 10 per cent, makes due thereon January 1, 1881, $36.00. That prior to January 1, 1866, he expended for surveying and cutting brush, $55.00, which with interest at 10 per cent makes due January 1, 1881, $137.50. That he expended for laying out addition $420.00, and that he has received from share holders thereon $320.00, leaving balance due him thereon $100.00, which with interest at 10 per cent makes due thereon January 1, 1881, $200.00. That he expended prior to May 1, 1871, for fence posts, fencing, and material used on lots still held by

him, $84.50, which with interest to January 1, 1881, is
$165.00.   Also prior to January 1, 1875, for cutting brush,
digging stumps, and grubbing on same lots, $175.00, which
with interest at 10 per cent makes due January 1, 1881,
$280.00.   That he has paid for taxes the amounts and at
the times shown in schedules attached to answer marked
'B,' 'C,' 'D,' and 'E,' upon which there is due January 1,
1881, to defendant $1,236.29.   That for 14 years' services
as trustee he has received no compensation, and that they
are reasonably worth $300 per year, making due him for
services as trustee January 1, 1881, $4,200.   That each of
the shareholders to whom a deed of a lot has been made
has quit-claimed to the defendant all his interest in the
seven acres reserve, and that he, the defendant, is trustee
for the plaintiffs only to the extent that the plaintiffs to-
gether with all other *cestui que trusts* are entrusted or have
rights in one uncertain lot in said Hartman's addition,
which results from the fact that said addition was laid out
into 84 lots represented by 83 shares, and which said lot
remains in the hands of said trustee.

" Admits that the said defendant has sold lots to parties
other than those holding shares in said Homestead Society,
a list of which, with parties to whom sold, prices, etc., is
given in 'schedule A' attached to answer and made part
of same.   That the sums realized from said sales with in-
terest at 10 per cent, make in hands of defendant January
1, 1881, the sum of $3,988.06, but insists that he is under
no obligation to account to plaintiffs for said sum for the
reason that they have no interest therein, although willing
to do so, if court adjudges that plaintiffs are entitled to an
account.

" Admits that defendant has leased parts of lots 60, 61,
66, 67, 72, 73, and 78, and has received therefrom, includ-
ing interest up to January 1, 1881, not to exceed $60.
That all such acts above enumerated have been done in his
capacity as trustee and for the benefit of and with the con-

sent and acquiescence of the *cestuis que trust*. That there is due him for disbursements, etc., as above set forth, including interest to January 1, 1881, the sum of $8,354.59. That he has received from all sources as above set forth, including interest to January 1, 1881, the sum of $4,048.06, which leaves due him the sum of $4,306.53.

"Wherefore defendant, desiring a full and final settlement with said plaintiffs of the matters set forth, and wishing to be relieved of the burdens resting upon him as said trustee, joins said plaintiffs in their prayer in regard to terminating said trust, and prays the court that if in the judgment of the court the power exists, said trust be brought to an end, and that all *cestuis qui trust* having interests in said Hartman's Addition have their rights and interests by the order of this court herein particularized and ascertained, and that the sum of $4,200 claimed for services as said trustee be allowed to defendant. That an account be taken of the moneys expended and received under said trusteeship, and that there be adjudged and decreed as due to defendant the sum of $4,306.53. That said sum be declared a lien upon all lots and lands remaining unsold in hands of defendant, and that unless the same is paid by a day to be fixed by the court the said lots, etc., be sold to satisfy said sum. Also that it be adjudged that plaintiffs have no rights or interests whatever in said seven acres reserve. That the only rights and interests of said plaintiffs exist in said one undetermined lot. That the interests of plaintiffs in said lot be determined. That said lot be ascertained and named, and if in the judgment of the court the power exists the same be sold subject to defendant's heir and out of proceeds said *cestuis que trust* be paid according to their several interests therein, and for general relief."

On the 7th day of May, 1883, an amended reply was filed denying all allegations of the answer not expressly admitted:

" Admits incorporation of the Homestead Society and that articles were duly filed and recorded in Dubuque county. Admits failure of first title taken by society, and the giving of power of attorney to defendant. Denies that defendant acting under said power expended much time and labor, etc., in relation to said lands, etc. Admits the making of deeds by Redick to the defendant as trustee of said society of the lands was known as Hartman's Addition. Denies the expenditure by defendant of his own moneys in prosecution of suit, etc., but alleges that when any moneys were paid out the defendant received the same from funds of the society; Denies that defendant is entitled to intrust. Denies that the words of trust expressed in the deeds from Redick are as alleged in answer, but aver that they are as follows : 'In trust for the use and benefit of and by the said John George Hartman to be conveyed to each member of the Homestead Society of Dubuque in the state of Iowa, his heirs or assigns who are entitled thereto according to his several interests in said premises, and not otherwise.' Denies that defendant expended much time and labor in adjusting the business of the society or that the same was done through the personal efforts of defendant, or that the *cestuis que trust* in consideration of his services awarded to defendant seven acres of land mentioned in answer. Denies that the holders of eighty-three shares conveyed to defendant all their right, title, and interest in and to said seven acres or any portion thereof, or that they acquiesced in any way in allowing defendent to reserve to himself said seven acres. Denies that the eighty-four lots were laid out in different sizes for the purpose stated in answer. Denies each and every allegation in answer wherein defendant claims to have expended money of his own for the benefit of his *cestuis que trust*. Denies that defendant is entitled to charge $300 per annum or any sum whatever for his services, or that $4,200, or any other sum was due him January 1, 1881, for his services. De-

nies that defendant, under the instruction and with the acquiescence of the *cestuis que trust*, deeded to them such lots as they might select or in the order of the demand for lots, or that he deeded to said *cestuis que trust* all the lots set forth in 'Exhibit B,' attached to answer, but avers the fact to be that many of the lots set forth in 'Exhibit B' were deeded by defendant to persons other than those entitled thereto under the terms of said trust, and were in fraud of his trust.    Denies that all of the *cestuis que trust* to whom defendant has deeded a lot have quit-claimed to defendant their interest in the seven acres.

"Avers that defendant has disposed of lots to a much larger amount in value than $3,988.06 as set forth in answer.    That he has leased and enjoyed rents and profits and use of much more of the land than is set forth in answer, and has received a much larger sum therefor than $60 as in answer stated, and that the same amounts to and is reasonably worth $1,000.    That defendant was not authorized to expend money in fencing, grubbing, or clearing said lots, and whatever was done by him in that regard was for his own individual gain and profit.    That he received large sums of money from sale of wood cut off from said lots for the occupation and cultivation of them.    Also that in disposing of lots to persons other than shareholders, defendant violated the express terms of his trust.    That in addition to the sums admitted to have been received by defendant, he received of Kountz & Ruth about the time of the settlement of the controversy in regard to the land purchased from them, the sum of about $1,200 as trustee.

"Denies that defendant advertised in newspapers in different states for claimants of lots, and denies that there is due defendant from said society the sum of $4,306.53 or any other amount.    Alleges that the persons to whom defendant deeded lots in said addition who were not shareholders, were mostly his own sons or other members of his

family. That the sums expressed as the consideration therefor, were much less than the real value of the lots, to-wit: That lot 55 deeded to Mary Arnold, the mother-in-law of Christian Hartman, for the consideration of $100 was worth then $300; that lots 60, 79, and 84, deeded to sons of defendant for the nominal sum of $350 were at that time worth $1,000.

"Prays that the sale of lots made by defendant to other, than shareholders be set aside and declared null and voids and for other relief as prayed for in petition."

By consent of parties the cause was referred to a member of the bar, as referee, to try the issues of law and fact, and report his findings to the court. After taking a large amount of testimony, the substance of which is contained in the abstract, the referee reported his findings to the court as follows:

"1st. That the 'Homestead Society' was organized May 14th, 1857, at Dubuque, Iowa. That there were eighty-three certificates of capital stock issued to subscribers therefor. The object being to purchase with the money paid in, a tract of land to be sub-divided among the members so as to give each one a home.

"2d. That in pursuance of such purpose a piece of land was bought of Kountz & Ruth in Omaha, and a bond for a deed taken October 13, 1857, which was paid for by the moneys received for subscription to the capital stock.

"3d. That the corporation expired in three years from the time of its organization according to the articles of incorporation.

"4th. That after the corporation expired in May, 1860, the individual stockholders, each of whom had contributed equally to the capital stock, continued to act together as an association of persons for the purpose of carrying out the original design of the society, as their several interests might appear.

"5th. That the title of said piece of real estate having

failed, the association sent defendant, one of the members, to Omaha for the purpose of taking such steps as might be necessary to secure a legal title to said land, or to secure other lands in lieu thereof.

"6th. That defendant, acting for himself and associates, commenced and conducted a series of litigations concerning the title to said real estate, and that finally, in full settlement of all such suits, he secured conveyances, one June 30th, 1865, and one December 26th, 1867, to himself in trust for the original shareholders in said Homestead Society, of the tract now known as 'Hartman's Addition,' which said tract of land when so secured became in equity the joint property of the several parties who had contributed to the capital stock, and each of said members who had paid for one share of stock became entitled to the 1-83rd undivided interest in and to said real estate now known as Hartman's Addition.

"7th. That said defendant, still acting for himself and associates at some time prior to January 1, 1868, laid off and platted said real estate as 'Hartman's Addition,' and caused a map to be made showing the several lots and tracts into which the same had been divided.

"8th. That said real estate was so subdivided as to consist of 84 lots, and also of a tract containing about 7 acres, designated upon the plat and map as 'Hartman's Reserve.'

"9th. That said defendant from time to time conveyed information by letter and word of mouth to the members of said society of the action taken by him; that he sent a copy of the plat to the members residing in Dubuque, Iowa, for their inspection and approval, and also called a meeting of such members as resided in Omaha or were represented here, for the purpose of considering the matter of the subdivision as shown by the plat.

"10th. That said meeting was held at Turner Hall, in Omaha, January 2d, 1868; that a large number, and probably a majority, of the stockholders were represented at

said meeting; that it was explained at said meeting that defendant had reserved to himself the tract known as 'Hartman's Reserve,' to reimburse him for moneys expended and expenses incurred in and about the litigation, etc., and also to pay him for services performed by him in relation thereto, said reserve being of but small value at that time, and defendant having given much time and attention to the conducting of the litigations and settlement, and having expended more or less money.

"11th. That the members present and represented at said meeting, as well as most or all of the members living at Dubuque, acquiesced in the proposed subdivision of said land as platted, and consented that defendant should receive said "reserve" in full payment for all such expenditures, expenses, and services; that it was also acquiesced in by himself and all the members at said meeting, and by the other members of said society, that one of said lots should be given to Wm. Baumer, secretary of said society, in payment for services performed by him, and that of the remaining eighty-three lots each member or representative of a member of the society who had been or was entitled to one share of the capital stock of the original corporation, should be entitled to receive one lot in full satisfaction and settlement of his interest in said entire tract, and that defendant should convey to each of the members, or his representative, upon demand, one of said lots, and that the person applying for conveyance should be entitled to select each his own lot in the order of application.

"12th. That the entire arrangement was acquiesced in by all the members of said society for more than ten years without objection or question.

"13th. That defendant conveyed a large number of said lots to various of said members and their representatives upon demand made of him, and so conveyed to all such members who made demand therefor.

"14th. That many of said lots have never been conveyed

by defendant to any of the other stockholders or their representatives, and are still held in trust by him for them.

"15th. That defendant at various times sold several of said lots to members of his own family and other persons, and executed to them what purported to be full and complete deeds of conveyance of the same, and said persons have now been in possession of several of said lots for many years, and there are several of the lots still unclaimed, and held in trust by defendant.

"16th. That plaintiffs, named as such, had all received lots in said addition by conveyance from defendant for all shares or interest held and owned by them up to the time of the commencement of this action.

"17th. That Streitz, one of the plaintiffs, has secured assignments and conveyances to himself, since the commencent of this action, of one or more shares or interests in said association, and is entitled to receive from defendant the conveyance of one lot for each of said shares, to be selected by him from the lots not yet conveyed to any shareholder."

Referee finds in addition to the above as matter of law :

"1st. That the arrangement by which defendant was to have 'Hartman's Reserve,' and Wm. Baumer was to have one lot for services, and by which each shareholder was to receive one of the other of said lots, there being eighty-three shareholders, was agreed to and acquiesced in so as to be binding upon all the members of said society, their heirs and assignees.

"2d. Finds that such action amounted to a complete partition and apportioning of said real estate among the members or individuals entitled to an interest therein. That in order to determine which particular lot each member was entitled to, there was nothing to be done except by way of selection according to the arrangement recited above.

"3d.  That by said subdivision said society and associa-

tion ceased to exist as such, and the members and share-holders ceased to be joint owners or tenants in common in said real estate, and ceased to have any common interest therein, and each one became entitled to and owned a separate interest in a determined portion of the same.

" 4th.   Finds that each member of said association or his representative became entitled to demand and receive from defendant one certain unconveyed lot, according to his own selection, and that this was the extent of. his interest in said property or of his claim against said defendant.

" 5th.   Finds that there is no joint interest in the plain-tiffs in this suit.   That each one of them, at the commence-ment of this action, had received in full his entire interest and share in said real estate, and was not entitled to de-mand any further conveyance from defendant, and had no right of action against him.

" 6th.   Finds that the conveyance by defendant of cer-tain of said lots to relatives and persons not members of said association, and not entitled to said lots as such, was a legal fraud upon the members who had not prior to that time received a conveyance of their respective lots from defendant.

" 7th.   Finds that such conveyances by defendant to third parties were and are in law null and void.

" 8th.   Finds that any person being the owner or assignee of an original interest in said Homestead Society, for which no lot has been deeded, is entitled to a convey-ance from defendant of any lot he may select in said addi-tion, not conveyed to a member or shareholder in said association, whether said lot has been conveyed to third parties or not.

" 9th.   Finds that if any right of action exists in favor of any shareholder as against defendant for the rents or profits of any lot in said addition, such right can only exist in favor of each individual shareholder for the account of

rents and profits of the particular lot selected by such shareholder as his own.

"10th. Finds that none of the plaintiffs had a cause of action against defendant at the time of the commencement of this action. That the interest of Streitz acquired subsequent to the commencement of this action, does not entitle him to relief in this case.

"Finds therefore that there is no cause of action in favor of plaintiffs, or any of them, against defendant, and that this cause should be dismissed."

On the 25th day of November, 1884, a motion to confirm the report of the referee was filed by attorneys for defendant.

On the 17th day of December, 1884, exceptions to the report were filed by attorneys for plaintiffs on the following grounds :

"1st. That the findings of fact made and reported by the referee, numbered 10th, 11th, 12th, 13th, and 16th, are not supported by the testimony.

"2nd. That so much of No. 1 as refers to the object of the organization is not supported by the testimony.

"3d. That so much of the 4th finding of fact as relates to the "understanding" as to disposition that was to be made of the land purchased for the benefit of the society was not sustained either by the law or the testimony.

"4th. To so much of the 6th finding of fact as states the interest to which each shareholder became entitled in Hartman's addition.

"5th. To the conclusions of law made and reported numbered 1, 2, 3, 4, 5, 9, and 10, and to the concluding finding that no cause of action existed in favor of plaintiffs, or any of them, as against defendant, and that case should be dismissed."

On the 16th day of July, 1885, a decree was entered as follows :

"This cause being heard at the last term of court upon

report of the referee filed herein, motion of defendant to confirm same and exceptions thereto by plaintiffs, and having been argued by counsel and submitted, the court being fully advised in the premises, does on consideration overrule said exceptions except as to the 12th, 14th, 15th, and 17th findings of fact, and the 1st, 2d, 3d, 4th, 6th, 7th, 8th, and 9th conclusions of law, and as to the said enumerated findings and conclusions, the exceptions thereto are sustained for the reason that the same relate to matters not material to the issues in this action, and save as aforesaid the report of the said referee is approved and confirmed.

"It is therefore considered and adjudged that this action be dismissed, and that the said defendant go hence without day and recover from the said plaintiffs their costs, etc. To which findings and decision plaintiffs except, etc."

The first point presented by plaintiffs and appellants, in this court, arises upon the overruling, by the district court, of the motion made by them after the coming in of the report of the referee, and before the final judgment, for leave "to file an amended and supplemental petition—to amend so as to conform to the facts as they appear in the evidence; and supplemental so as to set up the after-acquired rights of Streitz, one of the original plaintiffs."

I understand it to be an inflexible rule of practice, that in order to predicate error upon the refusal of a trial court to permit a supplemental pleading to be filed, the paper proposed, or at least the substance of it, must be made a part of the record.

Section 149 of the civil code provides that "Either party may be allowed, on notice, and on such terms as to costs as the court may prescribe, to file a supplemental petition, answer, or reply, alleging facts material to the case, occurring after the former petition, answer, or reply."

Under this provision the better practice, doubtless, is that the notice be accompanied by a copy of the pleading

in the form in which it is proposed to file it; but it would probably be sufficient if it contain the substance of the pleading. Here there does not appear to have been any notice, nor does the motion even contain the substance of the amendatory or supplemental matter of the proposed pleading.

We are informed by the brief of counsel, as we were at the bar, that the supplemental fact sought to be set up by way of a supplemental petition was that one of the plaintiffs, Streitz, had, since the commencement of the action, by purchase and assignment of other parties, become the owner of certain shares or rights in the property involved in the litigation, in addition to the interest which he had or claimed therein, at the date of the commencement of the action. It is contended by counsel for defendant that the above facts are not such as would be allowed to be set out in a supplemental petition, or in other words, that they do not constitute a cause of action which could be availed of in an action commenced before their occurrence.

The case of *Evans v. Bagshaw*, 5 Chancery Appeal Cases, 340, seems to be in point; so I will cite it in the absence of any case cited by counsel on either side. In that case the suit was brought by a married woman and her husband, together with their mortgagee, for a partition of certain real estate, of which the married woman was tenant in common in fee in one-sixth. The defendants, by their answer, stated, as was the fact, that the husband had been bankrupt before the mortgage was executed, and that all of his interest in right of his wife was therefore vested in his assignee; and the defendants submitted whether such a suit, being in fact a suit by the wife as reversioner, could be maintained. The mortgagee thereupon bought the life estate from the assignees of the husband, and the bill was amended by stating that fact.

The master of the rolls was of the opinion that the original bill, being by a reversioner for a partition, could not be maintained, and that the plaintiffs could not carry on

the suit upon a title different from that which they originally stated, and he dismissed the bill with costs.    This decision of the master of the rolls was affirmed by the court of appeals.    I quote the syllabus:  "If a plaintiff has no title to maintain his suit at the time when the bill is filed, he cannot carry on the suit by subsequently acquiring a title and amending the bill accordingly."  See also Daniel's Chancery, *page 1515 et seq., and notes.

From the testimony of Mr. Streitz, who was sworn as a witness on the part of the plaintiffs, it appears that he had never demanded deeds from the defendant on the shares which he had purchased since the commencement of the suit, to use his own language, "Because I was not ready yet—could attend to but one thing at a time."   Had he been allowed then to file a supplemental bill it would only have contained the allegation of his purchase of said three shares since the commencement of the action, his present ownership of them, and that he had made no demand of the defendant in respect thereto.

As I understand the theory of the case, as well from the reading of the bill as from the brief and argument at the hearing, the action was brought as well in behalf of the shareholders in the original homestead society who never had appeared at Omaha and claimed their lots or shares as of those who had; so that the case of the owners of the shares afterwards purchased by Streitz was already before the court by general allegations, which would apply to him or any other person who might become the owner and holder of them.   I therefore cannot see that anything would have been accomplished by setting out such subsequent purchase of these shares by Streitz by a supplemental petition.

The second point arises upon the overruling by the district court of the exceptions of the plaintiffs to the first, fourth, sixth, tenth, eleventh, thirteenth, and sixteenth findings of fact, and the fifth and tenth conclusions of law,

as contained in the report of the referee, as well as the finding and conclusion of no cause of action, and that the case should be dismissed, as contained in said report. This point also covers the final judgment of the district court, and under it the entire case will be considered.

It appears from the pleadings, evidence, and findings that in the month of May, 1857, there was organized at Dubuque, Iowa, under the general incorporation laws of that state, a company known as the Homestead Society, though it is not shown to have adopted any name. This society was composed of eighty-three members or shareholders, who seem to have, each and all of them, contributed equally to the funds of the society. The object of said society was found by the referee, and claimed by counsel at the hearing to have been, to purchase with the money paid in, a tract of land to be subdivided among the members so as to give each one a home. But such purpose cannot be gathered from the articles of association, a copy of which is contained in the abstract, but rather that the object was to engage in town site speculations. But, be that as it may, the fact is undisputed that in the month of October of said year the society purchased a tract of land adjoining the city of Omaha, taking a title bond for conveyance thereof. That said tract of land was divided into lots so as to give each member of the society three lots in severalty, and this division of the property among the members, or shareholders, seems to have been consummated by the society executing to each member a deed of the corporation to the three lots assigned to such members respectively, and by the said members accepting the same, presumably in full satisfaction of their claims upon the society.

But it seems that as early as the year 1858 the title to the said land failed, and the defendant, a member of said society, and who had become its president, was sent out to Omaha to look after the interests of the society, or of the

sharcholders and holders of the said lots in severalty, which, it does not appear. It is admitted that he had a power of attorney, but as that paper is not before the court, it does not appear whether he was the attorney in fact of the society, or of the individual holders of the cor- poration deeds of the lots.

The defendant, after instituting a lawsuit and prosecut- ing it in the district court of Douglas county for some seven or eight years, for the purpose of securing a title to said land, finally in the year 1865 affected a compromise and received from the defendants in said litigation, or a party acting for them, the tract of land, also adjoining the city of Omaha, the subject of this suit, in full of the claim of said society, or of the said lot holders, or both, as his authority to act in the premises was measured by the said power. The title to said last-mentioned tract of land was conveyed to the defendant in trust, the language of the deed being as follows: " In trust for the use and benefit of and by the said John George Hartman to be conveyed to each member of the Homestead Society of Dubuque, in the state of Iowa, his heirs or assigns, who are entitled thereto, according to his several interests in said premises, and not otherwise."

This tract of land was surveyed off into lots and streets, leaving an oblong piece of land in the south-west corner 410 by 680 feet, said to contain seven acres, which was called Hartman's Reserve, though not so marked on the plat be- fore us. There were 84 lots, not all of the same size. There is some confusion in the testimony as to why there were 84 lots when there were but 83 shareholders. Yet the conclusion seems to be that Colonel William Baumer, one of the original shareholders, who in the meantime had removed to Omaha, had acted as secretary of the society and superintended the surveying and platting of the said tract, had been by some of the parties interested, promised an additional lot or share in the land for his services, and

so made the survey and plat that there would be one extra lot for that purpose.    In the meantime a few of the original shareholders, in addition to the defendant and the said Colonel Baumer, had removed from Dubuque to Omaha, besides a few shares had been transferred to parties residing at Omaha.    After the said land had been surveyed and platted as above stated there was in the month of January, 1868, a meeting held in the Turner Hall at Omaha, for the purpose, so far as can be gathered from the evidence, of ratifying the acts of .the defendant in making the said division, survey, and plat of the said land, and especially in reserving to himself the seven acre piece called Hartman's Reserve, as his compensation for his time, services, and expenditures in and about the said litigation, taking care of said property, etc.    It appears to a reasonable degree of certainty that this meeting was attended by all the shareholders then residing in Omaha, and the proceedings of that meeting, together with the approval thereof by the shareholders at Dubuque, upon the same being reported to them as testified to by the defendant, may upon due consideration of the peculiar and anomalous facts of the case, together with the lapse of time since their occurrence, be deemed and taken as a ratification of such acts, in so far as the same were susceptible of ratification by the members of the society or shareholders, as such.

When we come to measure and define the rights and duties of the parties by the language of the deed, recognizing rather than creating the trust, and consider the same in connection with all the antecedent facts, I think it indisputable, that upon the delivery of the deed to the trustee, the shareholders or their assigns, if living, and the heirs of such as were deceased, become the equitable owners of the land as tenants in common.    It necessarily follows that they divide the land among themselves.    A part only of them being present near the property, and the others being widely scattered and residing at a great dis-

tance, it was competent for those present to agree upon a plan of division which would be binding upon them, but not upon the absentees until ratified by them ; and this plan being that the shareholders present should each select his lot and receive a deed therefor from the trustee in severalty, and the same right and privilege be extended to the absentees as fast as they should come forward and demand it; those of them who have availed themselves of this right are equally bound by the arrangement, division, and partition with those who were present at the meeting and were original parties to the plan of partition. Such plan of partition, including the partition and assignment to the defendant of the reserve of seven acres, as a compensation for his time, services, and money laid out in procuring the estate, laying out and caring for the same, being just, reasonable, and equitable, and the parties thereto having acted in the utmost good faith, so far as is shown by evidence in the case, it will be upheld.

It appears that each of the plaintiffs have ratified the plan of partition and division by availing themselves of its rights, privileges, and benefits, and by selecting and receiving conveyances for their respective shares in severalty. They have therefore ceased to have any interest in the balance of the estate, that being held by the defendant in part at least in trust for those of the shareholders, their heirs or assigns, who have not ratified the said plan of partition, or received conveyances for their several lots, and for them alone, free from and disconnected with any claim or equity on the part of any of the shareholders who have ratified as aforesaid.

I have purposely avoided incumbering what I have had to say by any reference to the quit-claim deeds executed to the defendant by the plaintiffs and other shareholders receiving conveyances of lots from him, as I do not deem any consideration of them necessary to the conclusion to which I have come, and there being no evidence of any

circumstance of duress accompanying the giving of any of them.

It appears from the complaint, and there is some evidence in support of the allegation, that one of the plaintiffs made selection of, and demanded a deed for a certain lot upon a corporation deed of which he was the owner, which the defendant, for some reason, refused to convey to him; but it appears that he thereafter selected another lot upon the same right, which was conveyed to him, and thereby waived whatever right he may have had to his original selection.

I do not express any opinion as to the right of the holders of shares in the society, or of corporation deeds, who have not received deeds thereon from the defendant, or in any manner ratified the plan of partition as agreed upon at the Turner Hall meeting, to call in question the title of the defendant to the seven acre reserve, so far as their rights are concerned, or the title to lots conveyed by defendant to parties not members of the society, or holders of corporation deeds, not deeming those questions to be before the court. But so far as the questions before the court are concerned, the equities are with the defendant.

The judgment of the district court is affirmed.

JUDGMENT AFFIRMED.

THE other judges concur.