CHARLES BEWICK, ANDREW W. COMSTOCK, WILLIAM B. COMSTOCK AND WILLIAM THORNE v. THE ALPENA HARBOR IMPROVEMENT COMPANY.

*Stipulation—Order of confirmation not appealable—Repeal of general incorporation law—Contracts with corporations—Corporations can bring suit within three years after expiration of franchises—Act 43 of 1875—Canal and harbor improvement companies.*

A stipulation that final decree shall be entered on the report of a special commissioner, for the amount found due by him, and that it shall not be appealed from, is conclusive on the parties and takes the controversy out of court for all purposes except the entry of the decree: and the court cannot require the delay of an order *nisi* for the confirmation of the report, nor allow exceptions to it.

Appeal does not lie from an order confirming the report of a special commissioner on a reference to ascertain the amount due between parties.

The repeal of a general incorporation law authorizing the formation of corporations for definite periods, does not necessarily shorten the corporate existence or destroy all corporate franchises.

Contracts made with a corporation created by a special charter for a specified term of years rest on the implied condition that the corporate existence would last as long as the charter declared; and the purpose of granting three years for closing up their affairs (Comp. L., § 3435) was not to limit, but to enlarge the corporate privileges so that they might continue business throughout the whole charter period.

A corporation in Michigan can begin legal proceedings in its own name at any time within three years after the expiration of its franchises (Comp. L., § 3435), and can continue them to a close unless superseded by trustees or receivers.

Act 43 of 1875 repealing the Act for the formation of Canal and Harbor companies (Comp. L., ch. 84) provides that they shall "continue to have legal existence for the purpose of closing up their business only in accordance with the provisions" of Comp. L., ch. 130. *Held* that under Comp. L., § 6623, this reference to chapter 130 is too indefinite to cut off their right to the enforcement of a decree in their favor, even though the proceeding is continued beyond the period of three years from the expiration of their corporate franchises allowed all corporations for closing up their affairs.

Appeal from Alpena.   Submitted October 30.   Decided November 21.

INJUNCTION.   Complainants appeal.

*Turnbull & McDonald* and *Henry M. Duffield* for complainants.

*Kelley & Clayberg* and *Moore, Canfield & Warner* for defendants.   A decree by consent is not appealable, *Jarvis v. Palmer*, 1 Barb. Ch., 379; *Costor v. Clarke*, 3 Edw. Ch., 405; *Atkinson v. Manks*, 1 Cow., 691; *Ringgold's Case*, 1 Bland, 5; *Davis v. Chanter*, 2 Phil., 545; 2 Dan. Ch. Pl., 1459; 1 Barb. Ch. Pr., (2d ed.) 373; suits begun by a corporation within three years after its franchises expire, may be prosecuted to judgment, *Montgomery v. Merrill*, 18 Mich., 344; *Ferguson v. M. & M. Bank*, 3 Sneed, 610; the dissolution of a corporation cannot impair the obligation of its contracts, 3 Kents'

Com., 307; *Bacon v. Robertson*, 18 How., 480; *Lum v. Robertson*, 6 Wall., 277; *Curran v. Arkansas*, 15 How., 304; *Owen v. Smith*, 31 Barb., 641; *Wood v. Dummer*, 3 Mas., 308; Dillon Mun. Corp., § 114; Field on Corporations, §§ 491–2; High on Receivers, § 303; a suit by or against a corporation is not abated by the expiration of its charter, *Lindell v. Benton*, 6 Mo., 361; *Louisville v. U. S. Bank*, 3 B. Mon., 138.

CAMPBELL, C. J. In 1874 complainants filed their bill against defendant to restrain a series of suits at law for liabilities under the act for the incorporation of canal and harbor companies, under which defendant was incorporated.

On the 15th of August, 1876, a decree was entered dismissing the bill and decreeing payment to defendant of $2638.97, with interest from March 31, 1876, and that they have execution therefor.

· On the 4th of September, 1876, leave was granted to make a motion to set aside the decree; and that it be heard October 4, 1876.

On the 31st of October it was ordered that the report of the special commissioner be referred back for further investigation and correction, and that he report by December 26th the correct amount, and that if the report should be so filed showing a less amount to be due than the decree called for, defendant might remit the difference. It was further ordered that the decree should continue to stand for its full amount until the report came in, and should not be changed unless the report was filed within the time mentioned.

The original reference to Mr. Warriner, the special commissioner, was by stipulation which agreed that on his report a final decree should be entered for the amount he should report, and that the decree should be a bar to any future suit for the demands referred to in the stipulation and bill, and that no appeal should be taken from the decree, and that notes should be given

for the amount payable at times specified. · This stipulation was made in December, 1875.

On the 27th day of November, 1876, Mr. Warriner made a new report reducing the amount due to $1104.15.

Exceptions were filed to this report by defendant, which were afterwards withdrawn.

The decree was enrolled April 18, 1877, and execution issued April 20, 1877.

On the 16th day of May, 1877, the circuit court commissioner made an *ex parte* order staying proceedings and granting leave to move to set aside the execution.

On the 19th of January, 1878, this motion was decided, or rather the judge's opinion was filed in favor of granting it, on the ground that the commissioner's report had never been confirmed, and that until a rule *nisi* had been entered, and the lapse of eight days thereafter, either party might except, and that confirmation was appealable.

On the 6th of April, 1878, defendants entered an order *nisi* of confirmation. Thereupon complainants filed exceptions. On the 10th of June these exceptions were overruled and the report confirmed, and a *remitter* was entered of the excess in the old decree.

On the 5th of July, 1878, complainants moved to stay proceedings and vacate the decree, because under an act of March 20th, 1875, the corporate existence of defendants was annulled and the act under which they were incorporated was repealed, and three years had since expired, and there was no longer any defendant in the cause.

This motion was denied. An appeal is taken from both of the orders last referred to.

The repealing act of March 20th, 1875, declared that corporations legally formed and existing under the repealed statute (Comp. L., ch. 84) "shall nevertheless continue to have legal existence for the purpose of closing up their business only in accordance with the pro-

visions of chapter one hundred and thirty of the Com-
piled laws of eighteen hundred and seventy-one." Pub.
Acts, 1875, p. 39.

Chapter 130 (§ 3435) of the Compiled Laws provides
that corporations whose charters shall expire by their
own limitation, or shall be annulled by forfeiture or
otherwise, shall nevertheless continue to be bodies cor-
porate for the term of three years after the time when
they would have been so dissolved, for the purpose of
prosecuting and defending suits by or against them, and
of enabling them gradually to settle and close their
concerns, to dispose of and convey their property and to
divide their capital stock; but not for the purpose of
continuing the . business for which such corporations
have been or may be established.

If the corporation continues to exist for the purposes
of this suit, we think the other grounds of appeal are
entirely without merit.    The original decree has never
been vacated or appealed from.    The circuit court, when
application was made to vacate it, refused to do so, but
merely allowed an opportunity to remit a portion of it
in case it turned out a mistake had been made by the
commissioner—which seems to have been the fact.    No
rehearing was granted, and the complainant not appeal-
ing was confined to the privileges with their conditions
fixed by the circuit court.

That court could not properly have gone further.
The parties, instead of adopting the regular practice,
saw fit to preclude themselves from it by their own
stipulation, which took the whole controversy out of the
hands of the court for any purpose except that of enter-
ing a decree, which both parties agreed should be con-
clusive, on the report of their own referee.

They cannot be allowed after doing this to ask this
court or any other court to adopt a part of this stipula-
tion and reject the remainder.    They must abide by
their own practice.

The circuit court should not have required the delay

of an order *nisi*, nor permitted exceptions to be considered, such as were filed in this case.   It is very well settled that an order of confirmation of such a report is not appealable, *Kingsbury v. Kingsbury*, 20 Mich., 214. If it required a further decree it is an interlocutory order. If on the other hand it is made as here as a favor to complainant and in pursuance of a stipulation, and not in the usual course of practice, there is nothing open to review because the parties have bound themselves by their own consent.   But inasmuch as the decree had already been made and no leave had been given to vacate it, that would also preclude any further discussion on the merits.   Whether there was or was not any legal or constitutional objection to any or all of the claims set up we need not inquire, because by their stipulation complainants agreed to pay them, and never appealed from the decree.   It is too late now to raise such questions.

The other question deserves attention.   There can be no doubt, under § 6623 of the Compiled Laws, if that section is applicable, of the duty of the circuit court and of this court to consider this case as still in full vitality. That section is express that a suit pending at the time of the dissolution of a corporation shall continue to final judgment or decree.   But as some further difficulty may arise concerning our own order and its enforcement, we are compelled to consider the effect—so far as it is involved in this case—of the repealing statute of 1875.

There is an obvious difference between repealing a general statute under which corporations have been formed for definite periods, and authorized to do acts and incur obligations that cannot be suddenly annulled without violating the obligation of contracts, and abolishing the corporations already organized under it. Whatever power the Legislature may possess to forbid future incorporations, or to limit or prevent the future enjoyment by existing corporations of certain franchises, such a repeal would not necessarily either end or shorten

the corporate existence, or destroy all corporate franchises. This distinction was pointed out in *Mok v. Detroit Building and Savings Association*, 30 Mich., 511, where a clause reserving to the Legislature the power of abolishing particular corporations was treated as peculiar and highly penal in its character. See p. 528. If this were not so the effect of the many changes and substitutions in our general corporation laws would lead to strange and destructive results. That the repeal in the present case was only an indirect attempt to reach this result of destroying particular corporations is evident from the fact that the same Legislature re-enacted the old law and confined it to the Upper Peninsula, and revived all the corporations in that region.

The three years section of the Compiled Laws was adopted when all corporations were created by special charter, and when no power had been reserved to repeal any charter except for cause. Under such a system all persons dealing with corporations knew when their corporate life would cease, and could contract and calculate accordingly. All contracts made with such a corporation contained by implication the condition that the corporate life would terminate as the charter declared it would. The object of this clause was not to limit, but to enlarge the corporate privileges, so that corporations whose existence for general purposes was nearing its end might enjoy the advantage of doing general business during the whole charter period, instead of being compelled to begin winding up their affairs before it ended.

The history of this three years' clause will throw some light on the proper construction of our present legislation. While it appears to have been borrowed originally in substance from some other states, it had received no recognized construction when we adopted it, and the concurrent provisions of our own laws would probably have rendered such construction if existing more or less inapplicable.

This clause appears first in the Revised Statutes of 1838, part 1, title 10, chapter 3, sec. 7, where, as before stated, it could only have applied to special charters.

It is there followed by two other sections which provided for the appointment of receivers or trustees to take charge of the corporate interests and settle up the business, and make final distribution.   These officers could be appointed at any time within the three years, and their duties could be performed during any period necessary beyond the three years, without limitation. Sections' 8 and 9 of same chapter, R. S. 1838, p. 230.

On the 15th of April, 1839, a law was passed "to provide for the voluntary dissolution of corporations, and to prescribe the duties of receivers in chancery, in certain cases, and for other purposes."   L. 1839, p. 94. This statute, after providing for the principal purposes named in its title, embraced a section (sec. 34) which provided that the dissolution of a corporation by a decree of the court of chancery, or by the expiration of its charter, or otherwise, should not abate any suit or proceeding in favor of such corporation, but it might proceed in the corporate name, or the receivers or trustees might if they chose be substituted as plaintiffs.   Sec. 34.    The next section (sec. 35) provided for suits by receivers either before or after dissolution, but that suits commenced after dissolution should not be in the corporate name.   Section 36 provided that no such suit once commenced should become abated at any time until brought to a close.   Section 37 provided that suits against corporations should not abate by their dissolution but continue to judgment or decree as if there had been no dissolution.

The law stood in this way until the Revision of 1846, and, as has been seen, the dissolution of a corporation in no way affected the prosecution or defense of any existing causes of action except in requiring cases on behalf of the corporation to be commenced after its dissolution in the name of its trustees or receivers, if any

had been appointed. The expiration of the three years of grace extinguished no rights absolutely.

The Revised Statutes of 1846, for some reason or accident which does not appear, omitted sections 8 and 9 of the old revision, and made no provision for the appointment of receivers or trustees of corporations whose corporate existence had run out or been annulled, while it retained section 7 *verbatim*, allowing three years to close up the corporate affairs. R. S. 1846, p. 212.

This Revision also retained in part the chapter on the voluntary dissolution of corporations, re-enacting without change section 34, above referred to; changing sections 35 and 36 so as to allow suits to be brought and continued in the corporate name after as well as before dissolution, by the receivers; and striking out a redundant clause in section 37 which was tautological.

The Compiled Laws of 1871, in all these respects retain the provisions of the Revision of 1846, which remain unchanged and show a manifest intent to keep alive all causes of action and to allow them to proceed in the corporate name after any interval of time. There can be no doubt of the power of the corporation to commence legal proceedings in its own name at any time during the three years and to continue them to a close unless superseded by trustees or receivers. The old method of appointing receivers or trustees having been repealed, and the statute nevertheless providing for suits after as well as before dissolution, it may be open to consideration how far it may have effect to enlarge the entire operation of the three years' clause in cases where it is otherwise applicable, or how trustees are to be appointed if not chosen, which we need not now consider.

It is quite clear that where corporations are created under general laws, which allow an existence of thirty years, and which, as in the present case, expressly authorize transactions which in the usual course of things could

not be all brought into litigation within three years after any sudden dissolution, it would not be competent for the legislature to adopt any arbitrary terms of repeal which would destroy contracts or other assured rights. And we are bound if possible, to construe any such repeal so as to make it valid rather than invalid. If no reference had been made to the Compiled Laws, they would still, so far as they lawfully could do so, apply in aid of the repealing statute. There was no need of referring to them for such a purpose, and such references are not usual. For any other purpose the reference is entirely too blind to be very significant. Chapter 130 of the Compiled Laws, besides including one chapter of the Revised Statutes, contains a great many provisions in the shape of independent statutes, passed at different times, and contains provisions for the dissolution of some corporations different from those applicable to others. We held in *Mok v. Detroit Building & Savings Association* before referred to, that when one act undertakes to eke out its own provisions by reference to another, the reference to be controlling must be so definite as to create no possible ambiguity. The Compiled Laws have not the force of a revision. That is prohibited by the Constitution. Where any chapter of the Compiled Laws is made up of several independent statutes, such a reference as was here made is too vague to be permitted to incorporate any particular provision of that chapter into the repealing law, without creating the mischief pointed out in the case cited; especially as it is not impossible there may be causes of action which could not lawfully be cut off in three years. Nor is such an intent apparent.

The primary object of the repeal was to prevent the continuance of corporate franchises in the future in the Lower Peninsula. In view of existing legislation it cannot be supposed, or at least it can not be admitted, that the Legislature meant to prevent the enforcement of existing demands. The reference to the Compiled Laws for the

distinction between continuing the old franchises and winding up the corporate concerns, although not needed, may be of some use in explaining the difference. But when the repealing act, which authorizes the corporation to continue for the latter purpose, fixes no limit of time, we cannot interpolate a three years' clause on such a general reference; and if we did so we should raise confusion by ignoring the sections in the chapter on voluntary dissolution, which as part of the Revised Statutes of 1846, constituting in law but one statute, modified that portion of chapter 130 of the Compiled Laws which was borrowed from the same Revision. We think the repealing clause, while prohibiting a continuance in ordinary business, leaves the corporate existence for winding-up purposes unchanged. There is therefore nothing to prevent the continuance of these proceedings, either in the circuit court or in this court, or to interfere with their enforcement in the name of the corporation.

The proceedings appealed from must be affirmed with costs.

The other Justices concurred.