JACOBS *v.* E. BEMENT'S SONS.

1. Corporations — Dissolution — Statutory Construction — Words and Phrases.

Applying the rule that when, after an enumeration, a statute employs some general term to embrace other cases, the other cases must be understood to be cases of the same general character with those named, a corporation dissolved by voluntary proceedings under chapter 300, 3 Comp. Laws, does not survive for three years after a decree of dissolution within the provisions of 3 Comp. Laws, § 8534, which apply to "all corporations whose charters shall expire by their own limitation or shall be annulled by forfeiture or otherwise."

2. SAME—RECEIVERS.

A receiver appointed in proceedings for the voluntary dissolution of a corporation becomes vested with all the estate, real and personal, of such corporation. Act No. 96, Pub. Acts 1905.

3. SAME—CREDITORS.

A creditor cannot institute an action against a corporation after a receiver is appointed and it has been dissolved and its assets partly distributed in voluntary dissolution proceedings.

4. SAME—DEBTOR AND CREDITOR—RECEIVERS.

Full authority is given to such receiver to reach all assets of the dissolved corporation which could be reached by any creditor.

McALVAY and HOOKER, JJ., dissenting.

Error to Ingham; Wiest, J. Submitted October 14, 1908. (Docket No. 57.) Reargued October 19, 1909. Decided June 6, 1910.

Assumpsit by Abraham Jacobs against E. Bement's Sons on certain promissory notes. A judgment for defendant is reviewed by plaintiff on writ of error. Affirmed.

Plaintiff brought assumpsit against defendant to recover on four notes, amounting, with interest, to $2,666.58, executed by defendant and indorsed to plaintiff. Defendant was a Michigan corporation, and, in defense, alleged dissolution proceedings under 3 Comp. Laws, chap. 300, and a decree therein May 6, 1905, dissolving the corporation and appointing a permanent receiver. The notes were presented during the course of receivership proceedings and the claim allowed, and plaintiff subsequently participated in dividends paid to the amount of 20 per cent. of the claim. The validity of the notes was not disputed. The trial court held that, by reason of the dissolution proceedings, the suit could not be maintained, and rendered judgment for defendant.

*Bernard B. Selling*, for appellant.

*Edward Cahill*, for appellee.

BLAIR, J.   I am of the opinion that the circuit judge reached a correct conclusion in this case.   The maintenance of the plaintiff's suit depends upon whether or not the provisions of section 8534, 3 Comp. Laws, apply to proceedings for the voluntary dissolution of a corporation under chapter 300 thereof.   I think that section does not apply.   It is a familiar rule of construction that—

"When, after an enumeration, the statute employs some general term to embrace other cases, the other cases must be understood to be cases of the same general character, sort, or kind with those named."   *Brooks* v. *Cook*, 44 Mich. 617 (7 N. W. 216, 38 Am. Rep. 282).

See, also, *Macumber* v. *Booming Co.*, 52 Mich. 195 (17 N. W. 806); *Roberts* v. *City of Detroit*, 102 Mich. 64 (60 N. W. 450, 27 L. R. A. 572); *People* v. *Shurly*, 124 Mich. 645 (83 N. W. 595).   In accordance with this rule of construction, the words *"or otherwise"* in the provision of section 8534 that "all corporations whose charters shall expire by their own limitation, or shall be annulled by forfeiture or otherwise," etc., should be referred to termination of the corporate existence by circumstances or acts not dependent upon the voluntary action of the corporation and not to voluntary proceedings in behalf of the corporation.   *Heap* v. *Manufacturing Co.*, 97 Mich. 147 (56 N. W. 349).   In that case it was held that a forfeiture of the charter of a manufacturing corporation could only be adjudged at the suit of the State through its attorney general.   The provisions of section 8534 are reasonable and beneficial as applied to a corporation whose charter has expired or whose charter has been adjudged forfeited at the suit of the attorney general.   The provisions of the section, if sought to be applied to proceedings under chapter 300, would be in conflict with the plain provisions of the chapter and introduce great confu-

sion into such proceedings. Section 8 of the chapter, being section 10859, 3 Comp. Laws, provides for the entry of a decree of dissolution "and such corporation shall thereupon be dissolved *and shall cease.*" In the language of Mr. Justice CAMPBELL:

"All the subsequent proceedings go upon the basis that there is no longer any corporation, and they are intended to secure the collection and distribution of the assets in complete analogy to proceedings concerning the estates of deceased persons and concerning insolvent estates. The receivers are put by two different sections on the footing of trustees of insolvents, and it is the insolvent law that gives the rule concerning references which are to be had under 'the same power' and with the like effect." *Cady* v. *Manufacturing Co.*, 48 Mich. 133 (11 N. W. 839).

Furthermore, the provisions of chapter 300 relative to the voluntary dissolution of corporations were enacted later in point of time than the three-year clause, which "was adopted when all corporations were created by special charter and when no power had been reserved to repeal any charter, except for cause." *Bewick* v. *Alpena Harbor Co.*, 39 Mich. 700. Sections 10886–10889, appear to me to support my conclusion, since these provisions are unnecessary so far as corporate litigation is concerned, if section 8534 applies. That section provides:

"All corporations whose charters shall expire by their own limitation, or shall be annulled by forfeiture or otherwise, shall nevertheless continue to be bodies corporate, for the term of three years after the time when they would have been so dissolved, for the purpose of prosecuting and defending suits by or against them, and of enabling them gradually to settle and close their concerns, to dispose of and convey their property, and to divide their capital stock; but not for the purpose of continuing the business for which such corporations have been or may be established."

The section contemplates the existence of the company for the purpose of gradually winding up its affairs with all the powers it had prior to the annulment of its charter, except those relating to the continuance of the business.

Such powers are manifestly repugnant to the scheme of chapter 300, which imperatively provides (section 10859):

"Upon the coming in of the report of the master, if it shall appear to the court that such corporation is insolvent, or that for any reason a dissolution thereof will be beneficial to the stockholders, and not injurious to the public interest, a decree shall be entered, dissolving such corporation, and appointing one or more receivers of its estate and effects; and such corporation shall thereupon be dissolved and shall cease."

By Act No. 96, Pub. Acts 1905, section 10862 was so amended as to confer upon the receivers power to continue the business of the corporation "for a period not exceeding sixteen months and to sell the property and assets of such corporation at private sale in the usual course of its business," etc. The corporation cannot cease and be in existence at the same time. It cannot have the right to prosecute and defend suits itself when the only provisions in this regard in chapter 300 require that pending suits must be conducted by the receivers, although they may use their own names or the name of the corporation, and also that new suits must be conducted by the receiver in his own name or the name of the corporation. In either case it is the receiver that gives vitality to the prosecution or defense, whether he uses his own or the corporate name. As Mr. Justice CAMPBELL remarked, the corporation in relation to the receiver occupies the position of a dead person to his executor. The shadow of the name alone remains. Section 10889 is not in conflict with section 10859, and should be construed in harmony with it. The fact that the court in which a suit is pending against the corporation may make an order for its continuance until final judgment affords no justification for wiping out the provision that after the appointment of a receiver the corporation "shall cease." Section 10865 indicates, as do all of the other essential sections, that the corporation does not have control of its defense. It provides that, after the filing of the petition for a dissolution,—

"All judgments confessed by such corporation after that time, shall be absolutely void as against the receivers who may be appointed on such petition, and as against the creditors of such corporation."

As the receivers become vested with "all the estate, real and personal, of such corporation," how is the corporation to defend itself? Manifestly, I think, through the receiver, who has its assets, and therefore the means of making a defense, and he will conduct the defense just as he may prosecute the suit of the corporation under section 10886 in the name of the corporation. Again, the appellant is not claiming the right to prosecute to final judgment a suit pending, against the receiver, at the time of its dissolution, for which provision is made by section 10889, but to institute an entirely new proceeding against the corporation after the receiver has been appointed, and he has presented his claim against the estate in his hands. And, if he may do this, he and all the other creditors may wait until the estate has been settled and the receiver discharged, provided the three years have not elapsed. No one, I think, would have the hardihood to contend that the corporation could continue after the appointment of the receiver "gradually to settle and close their concerns, to dispose of and convey their property, and to divide their capital stock."

I am also of the opinion that the receiver has full power to reach all assets of the dissolved corporation which could be reached by any creditor, and that such assets ought to be disclosed to such receiver by any creditor who has knowledge of them, for the benefit of all the creditors. 3 Comp. Laws, § 10866; *Osgood* v. *Laytin*, 48 Barb. (N. Y.) 463; 22 Enc. Pl. & Prac. 1286; *Attorney General* v. *Insurance Co.*, 77 N. Y. 272; *American Steel & Wire Co.* v. *Eddy*, 130 Mich. 266 (89 N. W. 952).

The judgment is affirmed, with costs to defendant.

OSTRANDER, MOORE, BROOKE, and STONE, JJ., concurred with BLAIR, J.

McALVAY, J. (*dissenting*). Plaintiff brought assumpsit against defendant to recover a judgment on four certain promissory notes, amounting, without interest, to $2,666.58, executed by defendant to certain parties and duly indorsed to plaintiff. Defendant was a Michigan corporation, and the defense interposed was that, under and by virtue of the provisions of chapter 300 of the Compiled Laws of 1897, the defendant corporation by its directors took proceedings to be dissolved, and on May 6, 1905, a decree was entered by the circuit court for Ingham county, in chancery, dissolving the corporation, and appointing the Detroit Trust Company permanent receiver. These notes were presented during the course of these proceedings and the claim allowed, and plaintiff subsequently participated in dividends paid, to the amount of 20 per cent. of the claim. This suit was begun after said claim was filed and before any dividends were paid. The validity of the notes is not in dispute. The court held that by reason of the proceedings had under chapter 300, 3 Comp. Laws, the suit could not be maintained and rendered judgment in favor of defendant. Plaintiff brings error.

The errors assigned are upon the holdings of the court in deciding the case, as expressed in the opinion, which is made a part of the record, and which reads as follows:

"The facts in this case are not in dispute. The defendant was a domestic manufacturing corporation, and on May 6, 1905, this court in a proceeding under chapter 300, 3 Comp. Laws, entered a decree dissolving the corporation and appointed a receiver under the statute to wind up its affairs. The plaintiff at the time the decree was made held the promissory notes set up in plaintiff's declaration, and there was due upon such promissory notes from the said E. Bement's Sons to said plaintiff the amount of such notes, with interest thereon. The plaintiff as such creditor presented his claim to the receiver, which claim was allowed at the amount of said notes, with interest thereon, and he has participated in the declaration of dividends paid creditors, receiving $266.66 on October 24, 1907, and $266.66 on January 8, 1908. August 13, 1907, plaintiff

commenced this suit against E. Bement's Sons as though it had not been dissolved, and now asks judgment against it for the amount due him.   The suit was commenced by declaration, and service was made on Arthur O. Bement, president of the corporation.   Can this suit be maintained? It is claimed by plaintiff that section 8534, 3 Comp. Laws, gives him the right to bring this suit.   In this I am of the opinion he is mistaken.   If this statute gives him the right to sue the corporation within three years after the court's decree dissolving it, then the rest of the same section of the statute applies, and the corporation can bring suits, and, for the purpose of enabling it to gradually settle and close its concerns and dispose of and convey its property, the corporation itself continues after the decree dissolving it and the appointment of a receiver.   If the officers of the corporation after the appointment of the permanent receiver upon the order of dissolution had attempted to do any of the things mentioned in section 8534, they would have been made to feel the heavy hand of the court, and have been punished for interference with the power of the court under chapter 300.   The decree dissolving the corporation ended its existence and never since that decree have its former officers had power to act for or in any way manage the estate left by such defunct corporation.   A reading of chapter 300 so clearly indicates that no such suit as this can be maintained that no other authority for refusing judgment need be cited.   Counsel for defendant, however, does cite other authority, and the case of *Adams Cotton Mills Co.* v. *Dimmick*, 96 Ala. 238 (11 South. 428, 17 L. R. A. 375), was so near in principle like this that the reasoning of the court in that case might well be adopted as the opinion in this case.   Chapter 300, 3 Comp. Laws, being the law of Michigan when plaintiff commenced his dealings with the corporation, he cannot now be heard to say that the provisions of this law impair the obligations of the contracts of the corporation.   Contracts are usually made having in mind existing law, and, as it must be understood that the provisions of law may be invoked by either party, such provisions, when invoked, do not fall within the prohibition of the Constitution against impairing the obligation of contracts.   Section 8534, 3 Comp. Laws, does not permit this suit to be brought. Chapter 300, 3 Comp. Laws, to be effective, prohibits such a suit as this.   Judgment for defendant."

The question involved in this case is whether suit may

be maintained against a corporation whose directors have invoked the provisions of chapter 300, 3 Comp. Laws, after a decree dissolving the corporation and the appointment of a receiver. Plaintiff insists that this suit may be maintained by virtue of section 8534, 3 Comp. Laws, which provides:

"All corporations whose charters shall expire by limitation, or shall be annulled by forfeiture *or otherwise, shall nevertheless continue to be bodies corporate, for the term of three years after* the time when they would have been so dissolved, *for the purpose of prosecuting and defending suits by or against them,* and of enabling them gradually to settle and close their concerns, to dispose of and convey their property, and to divide their capital stock; but not for the purpose of continuing the business for which such corporations have been or may be established."

The entire section has been quoted for the reason that the argument has been presented that, if applicable at all to such cases, the entire section is in force. The section quoted is one of the general provisions relative to corporations, and will be held to control in the case at bar unless the provisions of chapter 300, *supra,* are so repugnant to its application that we must hold that it is repealed by implication as far as corporations which have been dissolved by virtue of such chapter are concerned. The provisions of this section relative to the time within which suits by or against corporations whose charters have expired or been annulled by forfeiture or otherwise must be commenced, have been included in our statutes since 1838. A history of it is given at length in *Bewick* v. *Alpena Harbor Co.,* 39 Mich. 706–708; and, although the question now before the court was not involved, the decision in that case, and in other cases, in which this three-year term has been discussed cannot be construed as indicating that it would not apply to voluntary dissolutions. See *Bewick* v. *Alpena Harbor Co.,* 39 Mich. 700; *Empire Manfg. Co.* v. *Stuart,* 46 Mich. 484 (9 N. W. 527); *Montgomery* v. *Merrill,* 18 Mich. 338. In chapter

300, being the voluntary dissolution act, special provision is made that suits pending by or against such corporations shall not be abated, and for bringing new suits after dissolution in the name either of the corporation or the receiver (section 10887). Suits so brought, instead of being in contempt of the authority of the court where the dissolution had been ordered, would have been acts within the provisions of this law. Section 10889 provides that suits pending against such corporations at the time of dissolution shall continue to final judgment or decree. Construing section 8534, 3 Comp. Laws, with these provisions of chapter 300, it appears the legislative intent was not to make a corporation voluntarily dissolved an exception to the provisions of section 8534, but indicates by the provisions of sections 10887 and 10889 that the entire section should apply to such corporations. Such construction can imply no interference with the court having jurisdiction of the dissolution proceedings. It is within the fair construction of the statute and gives effect to all of the words of the statute, "all corporations whose charters expire by their own limitation, or shall be annulled by forfeiture *or otherwise*," and preserves to litigants their rights which in the cases cited it is said was the presumed legislative intent to preserve. The fact that a claim for the same indebtedness was filed and allowed in the dissolution proceedings is no bar to plaintiff's right to maintain this suit. It is certain that if such voluntary dissolution operates to wipe out all claims of creditors not satisfied by distribution, whether participating in the distribution of assets or not, chapter 300 is both in fact and in law a State insolvency law. This has been construed by this court not to be the character of this chapter. *Town* v. *Bank of River Raisin*, 2 Doug. (Mich.) 556–557. The court under this voluntary dissolution statute determines nothing as to creditors except to distribute assets on hand *pro rata* among them. Such a dissolution is not an adversary proceeding and may be taken by a solvent as well as an insolvent corporation. A creditor

need not participate in the proceedings. If they are begun honestly and in good faith, he will be given his *pro rata* in any event. Such a corporation may not, under chapter 300, commit suicide, and in that manner avoid paying liabilities, or deprive a creditor from his day in court, any more than an individual may do so. A private corporation cannot voluntarily dissolve so as to discharge itself from existing liabilities. *Portland Dry Dock & Insurance Co.* v. *Trustees of Portland*, 12 B. Mon. (Ky.) 79. And, in construing a statute similar to section 8534, the supreme court of West Virginia's views were those insisted upon by plaintiff in the case at bar. *Lumber Co.* v. *Ward*, 30 W. Va. 43 (3 S. E. 227).

It is urged repeatedly that, after such dissolution, a corporation is dead, and all rights to sue are therefore cut off, and creditors cannot recover judgment against a corporation, although debts are not paid in full. Such construction can be founded upon nothing except the theory that chapter 300 is an insolvency law. No court has ever so held. To do so would open the door to the grossest fraud upon creditors, and would be contrary to abundant authority which holds that all State insolvency laws are suspended while a Federal bankruptcy law is in force. *Sturges* v. *Crowninshield*, 4 Wheat. (U. S.) 122; *Boese* v. *King*, 108 U. S. 379 (2 Sup. Ct. 765). It is not contended that chapter 300 is without any effect, but invalid only in so far as it operates to discharge a corporation for future liability to creditors. This was held in the case of *Boese* v. *King, supra*, as to creditors who came in under an assignment and participated in a distribution of assets. The construction contended for by defendant would apply to all the creditors in any case where the assets of a corporation were insufficient to pay creditors in full. It cannot be that such a construction can be founded either upon sound reason or authority. The following authorities have followed the Federal decisions, and have held that insolvency laws were suspended and not in operation, although no proceedings in bankruptcy were instituted:

*Moody* v. *Development Co.*, 102 Me. 365 (66 Atl. 967), and cases cited; *Parmenter Manfg. Co.* v. *Hamilton*, 172 Mass. 178 (51 N. E. 529, 70 Am. St. Rep. 258); *Potts* v. *Smith Manfg. Co.*, 25 Pa. Super. Ct. 206; *Griswold* v. *Pratt*, 9 Metc. (Mass.) 16; *Ketcham* v. *McNamara*, 72 Conn. 709 (46 Atl. 146, 50 L. R. A. 641); *Harbaugh* v. *Costello*, 184 Ill. 110 (56 N. E. 363, 75 Am. St. Rep. 147); *Foley-Bean Lumber Co.* v. *Sawyer*, 76 Minn. 118 (78 N. W. 1038); *Lyman* v. *Bond*, 130 Mass. 291.

Upon another ground in this case it would seem that plaintiff is entitled to be permitted to pursue his remedy within the time limited by section 8534, and that is that plaintiff as a judgment creditor may reach assets which a statutory receiver appointed under chapter 300 is not able to reach; *i. e.*, to recover from individual stockholders of defendant corporation assets distributed as dividends while the capital stock was impaired. The powers given to receivers appointed under chapter 300 and their duties and obligations are the same as are given and imposed by law on trustees of insolvent debtors. If the insolvent corporation in this case could not question the matter of unlawful dividends paid its stockholders, by what principle of law can its voluntary assignee or trustee do so? This court has held that he could not attack a chattel mortgage transfer of his assignor; that he did not represent the creditors in such a manner as to entitle him to do so; that creditors could raise the question only in proceedings brought to enforce their claims (*Wakeman* v. *Barrows*, 41 Mich. 363 [2 N. W. 50]); and that none but a judgment creditor can attack a transfer on the ground that it is fraudulent as to creditors (*Millar* v. *Babcock*, 29 Mich. 526). It is held that claims for dividends unlawfully declared belong to creditors, and not to the receiver. *Butterworth* v. *O'Brien*, 39 Barb. (N. Y.) 192; *Farnsworth* v. *Wood*, 91 N. Y. 308.

Counsel for defendant urges that a careful examination of these New York cases shows that they are not applica-

ble to the case at bar. We read them as directly in point. On principle this contention must be sound. The relations of this voluntary receiver to the stockholders as well as to the creditors are such that to hold he could sue the stockholders for the benefit of the creditors would be allowing him to assume a position not in accord with such relations. On behalf of defendant, it is urged that the case of *American Steel & Wire Co.* v. *Eddy*, 130 Mich. 266 (89 N. W. 952), appears to be conclusive of this case. In that case a judgment creditor sought to recover, under section 7057, 2 Comp. Laws, against a preferred stockholder, dividends unlawfully declared. This court determined that a preferred stockholder was not exempt from the provisions of the statute, and was liable to the creditor. Careful attention is called to the opinion in the case, in which Chief Justice HOOKER, speaking for the court, said:

"This statute provides a new procedure, permitting one who has exhausted his remedy against the corporation (if not others) to sue the stockholder in an action at law. It is contended that this cannot have been contemplated, and that the collection should have been made by an assignee for the benefit of all creditors. We have no doubt that a court of equity, under its general powers, might take custody of all assets for the purpose of distribution, and cut off the personal remedy of the creditor, under this statute, as in other cases; but we have not such a case. We are not advised that any court has taken control of the assets of this corporation, or is in any way attempting their collection and distribution."

The question in the case at bar of the powers, duties, and rights of a voluntary receiver under chapter 300 was in no way before the court or considered by it. The general powers of a court of equity to authorize a general receiver to get possession of all of the assets of a corporation for the benefit of all creditors was recognized, and nothing more. The case cited is therefore not helpful in the case at bar. In this case the ample powers exercised by general receivers in chancery must be distinguished from

the limited powers granted to receivers, so called, under chapter 300, in proceedings voluntary and not adversary, and which must be strictly construed. The powers granted to receivers under chapter 300 are declared by that act to be the same as those granted to receivers of insolvent debtors. This court has never held that receivers of insolvents were clothed with all the powers of general chancery receivers, and has never receded from the position declared in *Wakeman* v. *Barrows* and *Millar* v. *Babcock, supra*. The powers of such receivers being limited by statute, sections 10863 and 10887 are only available to such receivers within such limited power, and unless we reverse previous decisions of this court, which have never been questioned, we cannot say that the assets sought to be reached by plaintiff can be reached by the receiver in this case. This is the practical construction which to the present time has been given to this law by the receiver and its counsel.

These proceedings under chapter 300 were instituted for the purpose of dissolving a solvent corporation, when, in fact, it was insolvent, as this court found in the case of *McIntyre* v. *E. Bement's Sons*, 146 Mich. 74 (109 N. W. 45). This is of importance, as showing that in fact these proceedings were undertaken to wind up and distribute the assets of an insolvent. This law authorizing the appointment of a receiver to collect, receive, and distribute the assets of an insolvent corporation is an insolvency law, although it does not provide for the discharge of the debtor. *Moody* v. *Development Co., supra*, and cases cited. If the construction contended for is given to this statute, it is contrary to the decision of this court in *Town* v. *Bank of River Raisin, supra*. If section 8534 does not apply to corporations which have instituted proceedings under chapter 300, and plaintiff is prevented from beginning suit and obtaining judgment against defendant upon a valid and subsisting obligation by the only way possible to begin such a suit, he is not only deprived of his right of action, but such law operates to discharge the debt against the corporation, and is an

insolvency law. There was in force before these proceedings were taken and ever since the United States bankruptcy act (Act July 1, 1898, chap. 541, 30 U. S. Stat. p. 544 [U. S. Comp. Stat. 1901, p. 3418]), and chapter 300 in so far as it operated as, and was, an insolvency law, was suspended, and could not operate to discharge the debt due plaintiff, and prevent him from taking a judgment thereon, and was to that extent null and void. There is abundant authority that the question may be raised and determined in this case. *Moody* v. *Development Co.*, 102 Me. 381, *et seq.* (66 Atl. 967).

Taking this view of the law applicable to this case, it follows that the judgment of the circuit court should be reversed, and, as there is no disputed question of fact presented, no new trial should be granted. A judgment should therefore be entered in this court in favor of plaintiff for the amount of the notes sued upon with interest to date, deducting payments as of the date received; and also costs of both courts.

The term of Mr. Justice GRANT having expired after this case was reargued, by consent of counsel Mr. Justice STONE, his successor, took part in its consideration and determination. Chief Justice MONTGOMERY did not sit.

HOOKER, J., concurred with McALVAY, J.