HON. M. B. REESE, CHIEF JUSTICE.
" AMASA COBB, } JUDGES.
" SAMUEL MAXWELL, } JUDGES.

FERDINAND STREITZ, APPELLANT, V. JOHN GEORGE HARTMAN, TRUSTEE, CHRISTIAN HARTMAN, SUS-ANNA W. VON BARRIES, EDWARD AINSCOW, WALTER BLACK, GUDBRAND OLSEN, WILLIAM E. CLARK, MORRIS MORRISON, AND OMAHA SAVINGS BANK, APPELLEES.

[FILED FEBRUARY 27, 1889.]

1. **Conveyance**: TRUST DEED. When there is nothing upon the face of a deed from a trustee to a purchaser, showing that the sale was made in violation of or contrary to the power contained in the deed of trust, a subsequent purchaser, who has no notice in fact of any irregularity in the sale by the trustee, will be protected as an innocent purchaser.

2. ———: CASE STATED. A tract of real estate was conveyed to a trustee on the 31st day of January, 1865, in trust for the use and benefit of and to be conveyed by the trustee to each member

3

of a Homestead Society, according to their several interests therein. In 1868 the property was platted as an addition to the city of O. Soon after that time a number of the members of the Homestead Society met in the city of O. and divided the property, deeds being made to them, by the trustee, according to their several interests. A number of lots remained unconveyed, for the reason that the persons entitled to them could not be found. In 1869, 1873, and at other periods, it became necessary to sell a portion of the unconveyed lots for the payment of taxes on and the preservation of the remainder of the trust estate. The sales were all made for value, and the funds arising applied to the object for which the sales were made. The purchasers reconveyed the property for full value, and at the commencement of the suit, the lots were in part held by grantees in good faith, and without actual notice of any deviation from the terms of the trust, while others held under purchases for value, but with such notice. No actual fraud was shown. At the time of the commencement of the action, there were sufficient unconveyed lots to satisfy the shares in the Homestead Society held by plaintiff as assignee.

It was *held*, that plaintiff had no equities as against such subsequent purchasers, whether with or without notice, as would entitle him to ignore the unconveyed lots and recover title to the lots previously sold.

3. **Trusts**: LIMITATIONS. While the statute of limitations does not run in favor of a trustee where the trust estate is created by privity of contract, yet where such relation exists by act of law, as where a trust estate is traced into the hands of a defendant, the statute of limitations will run in favor of the persons charged with such trusteeship.

APPEAL from the district court of Douglas county. Heard below by WAKELEY, J.

*Warren Switzler*, for appellant, cited: *McKesson v. Hawley*, 22 Neb. 696; *Pettit v. Black*, 13 Neb. 153; *Whitehorn v. Cranz*, 20 Neb. 398; Wade, Notice, secs. 17–21; Perry, Trusts, secs. 18, 19; Willard's Eq. Jur., sec. 186.

*Congdon, Clarkson & Hunt*, for appellee Hartman, cited: Perry on Trusts, sec. 830; Pomeroy's Equity, sec. 754; *DeBussche v. Alt*, L. R. 8 Ch. D. 286, 314.

*Gregory, Day & Day,* and *O'Brien & O'Brien,* for appellees Ainscow, Olsen, and Swanson, cited: Perry on Trusts, 3d. Ed., secs. 141, 228, 230, 850, 869.

*Montgomery & Jeffrey,* for appellee Black.

REESE, CH. J.

This action was instituted in the district court of Douglas county, and was for the purpose of setting aside certain conveyances to the real estate named in the petition, and to require a conveyance thereof to plaintiff by John G. Hartman, who, it is alleged, held the same in trust for plaintiff, he being the assignee of certain shareholders, or members, of an organization known as the Homestead Society of Dubuque, Iowa.

The pleadings alone comprised over eighty pages of closely type-written matter in the record, and it would be impracticable to set them out, at length, in this opinion.

The opinion written by Judge Cobb, in *Killinger v. Hartman,* 21 Neb. 297, contains quite an extended historical sketch of the organization and actions of the Homestead Society, to which we refer as giving much information upon that part of the case.

It is alleged in the petition that soon after the land referred to as belonging to the Homestead Society had been divided into lots, a large majority of the shareholders selected lots and received from the trustee, Hartman, deeds therefor; that it was the custom and rule adopted by the members that those who first made application to said trustee, and presented him with the evidence of their interest, (their shares in the society,) were given deeds to the lot or lots selected by such shareholder, and that, by consent, the same became the rule governing the selection and granting of lots by the persons interested in the said society; that plaintiff is the owner of a number of shares and parts

of shares in said society, and that there are a number of lots belonging to the shareholders who have not yet received deeds therefor, among whom is the plaintiff; that prior to the commencement of the suit, he had notified defendant Hartman, trustee, that he was the holder of said shares, and that, as such shareholder, he had selected the lots described in the petition, they being a part of the land originally owned by said society and held by Hartman as trustee, and had demanded a conveyance of the lots so selected, which had been refused by the trustee, and that he still refused to make the required conveyance.

It was averred that a part of the lots so selected by plaintiff had been conveyed to the other defendants, severally, by the trustee, through *mesne* conveyances, but that the persons to whom the conveyances had been made, took the same with notice of the right of plaintiff and his assignors, and that whatever interest or rights they had obtained by the conveyance, were subject to the rights of plaintiff, and that he was entitled to the conveyance notwithstanding the prior conveyance to them, they not having been members of the Homestead Society, and that in making the conveyance, defendant John G. Hartman, trustee, had been guilty of a breach of trust, and was an unfit person to hold said office of trustee, and the prayer of the petition was that each of the defendants be required to set forth the manner in which they received the deeds referred to; that such deeds be declared null and void and in fraud of said trust, and that the trustee be compelled to make conveyance of the property to plaintiff; and that he be required to render an account of his trusteeship, showing the lots deeded by him, and to whom; whether the persons to whom conveyances had been made were shareholders in said society; what lots remained in his possession unconveyed; and that he be removed from said trust, or, in case he be retained, that he be required to give proper bonds, conditioned for the faithful discharge of his duties; or that, in case

it should be finally determined that plaintiff is not entitled to the particular lots selected by him, that he be awarded other lots of equal value therewith, and that the trustee be required to make the proper conveyance.

After the filing of the answer of John G. Hartman, trustee, the plaintiff filed a supplemental petition, in which he alleged that subsequent to the commencement of the action he had acquired title to other shares in the Homestead Society by purchase, and substantially the same relief was asked as in the original petition concerning such shares.

The answer of John G. Hartman was in effect an admission of the organization and existence of the Homestead Society; his conveyance of lots to the owners of shares, so far as the same were selected; that plaintiff was not one of the original shareholders; and that he was not entitled to a conveyance; that the deeds referred to in the petition made to the other defendants, were for full consideration, and were made for the purpose of preserving the trust estate.

The answer of Christian Hartman in effect admitted the execution of a deed to lot number eighty-four, in Hartman's addition, to A. G. F. Hartman, and the conveyance of said lot by him to Christian, on the dates named in the petition, but denied all fraudulent intent, and alleged that the said A. G. F. Hartman paid the full value of said lot, at the time of his purchase and of the conveyance to him; and that he, Christian, paid to said A. G. F. Hartman full value thereof, at the time of his purchase and of the conveyance made to him.

It is also admitted that lot number seventy-nine was conveyed by the trustee to Charles H. Hartman, and by Charles H. to the answering defendant; but fraud was denied, and the allegation of the payment of full value on each occasion was made.

It was also alleged that at the times of the several conveyances, or soon thereafter, the deeds were duly recorded

in the proper recording office of Douglas county, and that plaintiff had full notice thereby; that after the conveyance from the trustee, the grantees had taken possession, and that defendant and his grantors had been continuously in possession of the property, had paid the taxes, and that the claim of plaintiff, if any ever existed, was barred by the statute of limitations.

The answer of the Omaha Savings Bank admitted the execution of a mortgage by Charles Ross to the defendant Morris Morrison, upon the east half of lot number fifty-five, and the assignment of said mortgage by Morrison to the bank; that said mortgage was for the purpose of securing the sum of $850, with interest, due from Ross to Morrison, which mortgage, and the note accompanying the same, was purchased by the bank for full value; and that the bank, at the time of the filing of the answer, was the owner and holder thereof; and that it had no notice of the claim of plaintiff or any other person through whom plaintiff claims to have an interest in said property, the record title thereof appearing complete and in the defendant Ross. The allegations of the petition, so far as they effected the rights of the bank, were denied.

The answer of defendant Susanna Von Barries admitted the execution of the deeds from Redick and Hartman; the platting of the land into what is known as Hartman's addition to Omaha; the conveyance of the north forty feet of lot seventy-nine, through *mesne* conveyances, from John G. Hartman to her; denied the existence of fraud; alleged that she was the legal owner, and in possession of the property for a valuable consideration paid; that the deeds by which the several conveyances were made were placed upon record, by which plaintiff and his grantors have had notice of her rights; denied all notice of any claim of right on the part of plaintiff or his assignors at the time of her purchase, and alleged that the claim of plaintiff, by reason of her possession, was barred by the statute of limitations.

By the answer of Walter Black, the title of John G. Hartman in the property, at the time alleged in the petition, was admitted, and it was admitted that Black was not a member of the Homestead Society. It was alleged that for full value previously paid, on the 3d day of December, 1881, said John G. Hartman deeded the property to the answering defendant; that since the year 1879, and since the said conveyance, defendant has paid the taxes and had possession of the property. All allegations of fraud were denied, as well as any knowledge of any rights of plaintiff or his assignor; and all allegations as to plaintiff's rights were denied.

By the answer of Gudbrand Olsen, the allegations of the petition were denied generally, and it was alleged that the north half of the east one-third of lot thirty in Hartman's addition to the city of Omaha, was purchased from defendant Ainscow by Olsen for full value, and a conveyance by warranty deed made therefor; that at the time of the purchase he had no knowledge of any alleged interest of plaintiff; that the title to the property, as shown by the records of Douglas county, was complete; and that the title thereto was in the defendant.

By the answer of Ainscow, the allegations of the petition were denied, and it was alleged that he purchased the east one-third of lot thirty in Hartman's addition, from Hartman, and received therefor a good and sufficient warranty deed, without any knowledge or notice of any alleged rights of plaintiff, and without notice that any person other than his grantor made any claim to said property.

The answer of Elias Swanson, referring to the south half of the east one-third of lot thirty, in Hartman's addition, was substantially the same as those of Olsen and Ainscow.

John G. Hartman then filed an answer to the supplemental petition of plaintiff, which also constituted an amended answer to the original petition. By it the con-

veyance from Redick to defendant of the land which af-
terward was platted as Hartman's Addition to Omaha, the
platting thereof into eighty-four lots, and a reserve of
about six and one-half acres; the issuance of eighty-three
shares of capital stock by the Homestead Society; the se-
lection by a majority of the members thereof, or their as-
signs, of lots in Hartman's addition, and the conveyance to
them of the lots so selected, in the order of their selection;
that defendant still holds, as trustee, a number of lots in
said addition, the conveyance of lot thirty-four to A. G.
F. Hartman, lot seventy-nine to Charles H. Hartman, the
east one-third of lot thirty to Edward Ainscow, lot twelve
and the north forty-three feet of lot thirteen to Walter
Black, lot thirty-four to C. A. Weber, and lot fifty-five to
Mary Arnold, were admitted. All other allegations of
the petition were denied.

It was averred that on the 28th day of May, 1857, cer-
tain parties in the city of Dubuque, in the state of Iowa,
associated themselves together as the Homestead Society,
and that on the 30th day of the same month and year,
their articles of incorporation were filed in the recorder's
office of Dubuque county, of said state; that by the terms
of said articles, the incorporation was to continue for the
period of three years; that eighty-three shares of stock
were issued; and that said corporation was dissolved on the
28th day of May, 1860, by the terms of its articles. The
purchase of the property from Kountze, and the payment
therefor of the sum of $6,000.00, was made, that being all
of the money paid into the corporation by the holders of
the eighty-three shares of stock, and that after the purchase
the land constituted the sole assets of the corporation; that
the corporation at once subdivided the land mentioned
into blocks and lots, and divided the same among the share-
holders of the corporation, issuing a deed conveying three
lots to each holder of a share, the shares being all taken
up and the deeds issued in lieu thereof; that shortly there-

after the covenants in the deed from Kountze and Ruth, the immediate grantors to said Homestead Society, failed, and the society was dispossessed of the land; that on the 8th day of September, 1858, the Homestead Society, by its proper officers, gave to defendant, who, at the time, was president of the corporation, and resided in Dubuque, a power of attorney, authorizing him to act for and in the stead of the society, and to take such course and proceedings at law or otherwise, with reference to the bond and deed by which the real estate was purchased and conveyed to the society, as in his judgment the circumstances of the case and the interest of the society should require, which power of attorney was duly recorded in the proper office, in Douglas county, Nebraska; that in obedience to the said power, he came to the city of Omaha, expended much time and labor endeavoring to adjust the matters in controversy between the society and Kountze and Ruth, but failing so to do, on the 5th day of October, 1858, he commenced an action in favor of the society and against Kountze and Ruth, in the district court of Douglas county, upon the bond referred to; that after many years of trouble and litigation, and on the 26th day of January, 1867, he compromised, and settled the controversy with Kountze and Ruth, and received in lieu of the land previously conveyed to the society, a warranty deed from John I. Redick for the real estate mentioned and described in the petition; that said deed contained the recital that the conveyance was "in trust for the use and benefit of, and by the said J. George Hartman to be conveyed to, members of the Homestead Society, at Dubuque, in the State of Iowa, in the proportions and according to the several interests in and to said premises to which said members are severally entitled, and not otherwise;" that after the settlement and conveyance, defendant took possession of the lands so conveyed and entered upon said trust; that from the commencement of the suit against Kountze and Ruth, in 1858, to the time

of the settlement thereof, in 1867, numerous original hold-
ers of shares in the Homestead Society, and assignees of
others, came to Omaha, and as a result of conferences had
by him with them, and by letters from members in Du-
buque to him, he platted and laid out the lands received
from Redick, into Hartman's addition, the plat containing
eighty-four lots and a reserve of six and one-half acres;
that said addition and $20.00 in money constituted all of
the property and money that he, as trustee, had at any
time in his possession, and that at said time the lots so
platted were of but little value; that he had no knowl-
edge of the names or residences of all the parties inter-
ested, but that at meetings held in the city of Omaha, in
1868, by defendant and his associates residing in said city,
and through letters received from interested parties in Du-
buque and elsewhere, defendant was given the six and
one-half acres as compensation for his services up to said
time; and that immediately thereafter he entered upon
said reserve, and has ever since lived upon the same and
occupied it as his home; that at said meetings it was de-
termined that defendant, as trustee, should deed a lot in
Hartman's addition to each holder of a deed issued by the
old corporation on a full share, but that the interested
parties in Omaha should have the first selection of lots,
and that defendant, as trustee, should deed all the other
interested parties one lot for a full interest, in the order of
their coming and demand for deeds; that the supreme court
of Nebraska had found that at said meeting William Baumer,
an interested party and the secretary of the old corpora-
tion, was given as compensation for his services, the eighty-
fourth or odd lot, which was numbered thirty-two, and
that thereafter, defendant, as trustee, made deeds to every
interested party showing his interest and demanding a
deed or deeds, and not knowing the names or residences of
other interested parties, placed notices in English and Ger-
man newspapers, calling upon all to come forward and get

their deeds; that to every interested party demanding a deed, he had made conveyances, except to plaintiff; but that he had refused to make deeds to plaintiff, by the advice of counsel, until such time as the court should instruct him in the premises.

The right of plaintiff to a deed or for an accounting was denied, subject to his establishing or proving his ownership of the interests as alleged in his petition, and subject to all rights lost by the lapse of time. But it was alleged that in case the court should find that plaintiff was entitled to a conveyance of any lots, as such owner of the interests named, there was real estate held in trust for such persons as would show a right thereto, and which he was willing to deed to plaintiff, if so directed by the court. A showing was made of the trusteeship, the expenditure of money and time by him in procuring the surveying and platting of the addition, and his expenditures in connection with the real estate, including a large amount of taxes paid, the compensation to which defendant should be entitled for his services during nineteen years while in charge of the property, the persons to whom deeds had been made in consideration of their membership in the original company, the persons to whom property had been sold for value, and the amount received therefor, the sum of $3,200, in the county court of Douglas county, paid for the right of way by the Omaha & Southwestern Railway Company, from lots condemned. The numbers of the lots and a strip of unplatted land yet held by him in trust, are set out, by which it appears that in addition to the strip of unplatted land, lots fourteen, fifty, fifty-four, sixty-one, sixty-six, sixty-seven, seventy-two, seventy-three, and seventy-eight, were not yet sold nor conveyed. It was alleged that defendant had no means of knowing the number of or names of persons entitled to the conveyance of said property; that he had never had in his hands any money belonging to them, and that for twenty years he had been ready and

willing to perform his trust; that he had only been able to preserve the property and the title thereto by the payment of the taxes annually as they accrued, by selling the lots sold to persons not members of the society, for that purpose, he not having the funds of his own necessary to meet said payments and preserve the property.   An accounting was demanded, with the prayer that the interests of the parties be ascertained; that a sufficient portion of the property be sold to meet the expenditures made by him out of his own funds, and pay him proper compensation for services; that the balance remaining on hand be ordered to be invested for the benefit of the parties entitled thereto; and that he be relieved from his trust.

For a reply to this and the other answers filed by the defendants, plaintiff denied the fulfillment of the trust by defendant, as alleged in his answer and the dissolution of the Homestead Society on the 28th day of May, 1860, or at any other time.   It was admitted that the society subdivided the lands acquired from William Ruth into blocks and lots, and divided the same among the shareholders; but it was denied that the shares of the corporation were taken up and deeds executed in lieu thereof, or that certificates of stock were issued to the original shareholders of the homestead corporation, or distributed among them.

The failure of the title to the real estate obtained from Kountze and Ruth was admitted, as well as the execution of the power of attorney to defendant, and the institution of the suit against Kountze and Ruth, and the conveyance by Redick.

The allegation in the answer, that the real estate and twenty dollars in money constituted all the property received at any time by defendant, was denied, and it was alleged that large sums of money had been received by him.

That defendant was ever given the tract of land known as Hartman's reserve in compensation for his services, and

his title thereto as against the rights of plaintiff, was denied. The correctness of the statement of the account contained in the answer, as well as his right to introduce the same in this action, was denied; yet plaintiff offers to refund to him all sums which he may have expended in payment of taxes upon the lots or fractions of lots selected by plaintiff, and for which the deed was demanded.

The other allegations of the answer were denied in substance, and it was alleged that instead of seeking to preserve the property, the trustee had squandered and dissipated the estate.

A trial was had to the court, which resulted in the following findings and decree:

"This cause came on for hearing on the petition, supplemental petition, answers, replies, and the evidence, and was submitted to the court, on consideration whereof the court finds:

1st. That the plaintiff Streitz is the owner of shares and parts of shares in the homestead society of Dubuque, Iowa, as follows: Full share number 23; full share number 44; full share number 51; full share number 40; full share number 72; one-third share number 64; one-third share number 38.

2d. That as such owner he is entitled to select and receive for each and every such full share and part of share from the defendant, John George Hartman, trustee, conveyances of one lot for each and every full share, and a proportionate part of a lot for each and every part of a share, in Hartman's addition to the city of Omaha, upon the payment by plaintiff of all taxes paid by said trustee, on each and every one of said lots and parts of lots, and shall recover costs in this action as against such trustee; to which finding and order said trustee, John G. Hartman, by his attorney, excepts.

3d. The court finds further that said Streitz is for one of said full shares entitled to, and the said trustee is here-

by ordered to make, a trustee's deed to said Streitz, to lot fifty (50) in said addition; to which finding and order the said trustee, John G. Hartman, by his attorney, excepts.

4th. The counter claim of Christian Hartman, based on the failure of title to lot thirty-two (32) of said addition, is hereby dismissed without prejudice at the cost of said Christian Hartman; to which finding and order the said Christian Hartman, by his attorney, excepts.

5th. As to each and every of the defendants, except said John G. Hartman, trustee, and Christian Hartman, the court finds the issues in their favor, and this action as to them, and each of them, is hereby dismissed, with the costs incurred in each and every of the other defenses to be paid by the plaintiff; to which finding and order the said plaintiff, by his attorney, excepts.

6th. As against the plaintiff and all claiming under or through him by virtue of said shares or parts of shares, the titles to the full lots and parts of lots in said addition are hereby quieted and confirmed in the parties following, to-wit:

Lot thirty-four in W. E. Clark and his grantees; lot fifty-five (55) in Morris Morrison and his grantees; lots seventy-nine (79) and eighty-four (84) in Christian Hartman and his grantees; east one-third ($\frac{1}{3}$) of lot thirty (30) in Edward Ainscow and his grantees; north forty-three (43) feet nine (9) inches of lots twelve (12) and thirteen (13) in Walter Black; to which order and finding the said plaintiff, by his attorney, excepts.

Plaintiff appeals.

It will be observed that by the findings of the court, plaintiff is entitled to a conveyance of lot number fifty, which was originally selected by him, and that by virtue of his ownership of the shares in the Homestead Society, he is entitled to a conveyance of lots from the unconveyed portion of Hartman's addition, to the extent represented by such shares, but that he is not entitled to a conveyance

of the property held by or granted to the defendants named in the decree, their title thereto having been quieted. It therefore becomes necessary to examine only that portion of the decree which was in favor of the defendants who have purchased of defendant Hartman and hold deeds of conveyance from him. Lot thirty-four is held by defendant W. E. Clark. It appears, by the evidence, that on the 23d day of March, 1869, John George Hartman executed a deed of conveyance by which he granted and conveyed this lot to Louisa Frederick Dorothe Ehlers Fuchs. The following recital appears in the deed:

"And whereas, at a meeting of the said members of said Homestead Society, a division of said parcels of land into town lots was had and made proportionately to and among the members thereof according to the shares and interests of the respective members thereof; and whereas, by said division of said parcels of land, the lots of ground numbered as hereinafter set forth and described, were allotted and fell to the said Louisa Frederick Dorothe Ehlers Fuchs as her share, proportion, and interest in said parcels of land; and whereas, the said Homestead Society has requested the said J. George Hartman to execute and deliver to each several members thereof, a proper conveyance and release for the lots of ground so apportioned and allotted as aforesaid; now, therefore, this indenture witnesseth: that I, the said J. George Hartman, in the discharge of the trust reposed in me, and in consideration of the premises aforesaid, do by these presents grant and convey and confirm unto the said Louisa Frederick Dorothe Ehlers Fuchs," etc.

This deed was duly recorded on the 19th day of January, 1870, and on the 10th day of November, 1886, Fuchs conveyed the same to Sarah Rosenberg by warranty deed, and on the 22d day of December of the same year, Rosenberg conveyed to Clark. These latter conveyances were made after the institution of this suit, but prior to the filing of the supplemental petition by which the title was

called in question, and, therefore, in so far as they were affected, prior to the commencement of the suit.  It is shown that Clark purchased in good faith and with no actual knowledge of a conflicting claim, paying $4,000 for the lot.

The original trust deed, from Redick to Hartman, contained the following recital after the conveying part of the deed: "In trust for the use and purpose following, that is to say: For the use and benefit of, and by the said J. George Hartman to be conveyed to, each member of the Homestead Society of Dubuque, in the state of Iowa, his heirs or assigns who are entitled thereto, according to his several interests in said premises, and not otherwise."

Aside from any discussion of the absence of equities in favor of plaintiff, the interests of Clark may be disposed of by reference to this conveyance alone.

Assuming that the recital in the deed from Redick to Hartman was notice to subsequent purchasers, yet it was not notice to the grantees of Fuchs that the trustee was not acting in accordance with the power conferred upon him in making the conveyance to her.  The trust conferred upon him the right to decide, in the first instance, who were the members of the society and entitled to deeds. The deed to Fuchs recited that she was entitled to the conveyance by reason of her relation to the Homestead Society. Whether this was true or not, it is not necessary here to inquire, for the reason that Clark is shown to have purchased long after the conveyance to her, in good faith, without notice, and for full value.  His title, therefore, cannot be questioned by plaintiff.  (*Norman v. Towne*, 130 Mass. 52; *Gunnell v. Cockerill*, 79 Ill. 79; *Wilson v. Wall*, 6 Wall. 83.)

Lot number seventy-nine was conveyed to Charles H. Hartman by the trustee on the 27th day of August, 1873, and the deed was recorded on the same day in the proper records of Douglas county.  Lot number eighty-four was conveyed to A. G. F. Hartman on the 20th day of July, 1869, the deed having been recorded on the 22d day of the

same month. These deeds contain substantially the same recitals as the one to Louisa Frederick Dorothe Ehlers Fuchs, hereinbefore referred to. But it appears that the grantees were not members of the Homestead Society, and were not entitled to the deeds for that reason. These lots were afterward conveyed to Christian Hartman, in 1882, who also had knowledge that they (the grantees) were not entitled to them as shareholders in the society. This being true, C. Hartman would not be protected by such recital; but as it appears that a part of lot seventy-nine was sold by Hartman to Spiegle within a year after his purchase, and there being no proof of Spiegle's knowledge, he would be protected. But aside from this, it appears that the lots were sold for full value, for the purpose of procuring money with which to pay the taxes upon the other portions of the estate, and more than ten years prior to the commencement of the suit. It is quite probable, therefore, that plaintiff's action would be barred by the statute even granting that C. Hartman, at the time of his purchase, had knowledge that the trustees had no authority to sell and convey to his, C. Hartman's, grantor. The rule seems to be, that as against the trustee the statute does not run; but where one becomes a trustee by construction of law, and not by privity of contract, as where he is held to be a trustee of property which he has fraudulently obtained, or where a trust estate is traced into his hands, or where a resulting trust arises, the statute runs from the date of the discovery of the fraud or the acquiring of the trust estate. (Perry on Trusts, sec. 865, and cases cited.)

By this rule the statute began to run at the time of the transfer of the trust property to A. G. F. Hartman and Charles H. Hartman, and plaintiff's right to recover would be barred under the provisions of section six of the civil code. Yet were this not true, we fail to see any equity in favor of plaintiff, which would entitle him to a decree avoiding this conveyance.

Soon after the property was platted, all of the owners who could be found, were notified, and a division was made by which they received the lots to which they were entitled. No division was made in favor of those to whom notice could not be given, and therefore the lots were held by the trustee for their benefit. Taxes accumulated more or less rapidly. and it became necessary that they should be paid, or the whole estate would be lost. The trustee had no means with which to make the payment; nor, indeed, was there any legal or moral duty devolving upon him to use his own means in that way. For the purpose, therefore, of preserving the estate, the lots were sold and the money applied to that use. Plaintiff is not deprived of any right by such sale, except, perhaps, the right of first choice, there being a sufficient number of unconveyed lots to satisfy the shares held by him. More than seventeen years after the platting of the ground, and nearly that length of time after the division, plaintiff demands that the title to the property conveyed for the purpose of making it possible for him to receive a portion of the lots, be now destroyed, in order that he may have a better choice than is afforded in the remainder of the property. We are unable to detect any equities in his favor.

Defendants Olsen and Swanson purchased each a portion of lot thirty from Edward Ainscow, who was the direct purchaser from John George Hartman, the trustee. It is shown that the sale was made to Ainscow in 1881, for the purpose of raising money to pay the taxes on the unconveyed portion of the estate; and while there is some proof that he had actual notice of an outstanding claim, yet this is denied by him, and the court no doubt found from the evidence that he had not. It is clear that Olsen and Swanson had no such notice, and that they purchased in good faith; their purchase, as well as that of Ainscow, was for full value.

What we have before said with reference to plaintiff's equities as against Hartman, must apply here as well as to

the other defendants, who bought under similar circumstances, and need not be repeated.

From a careful examination of the whole case, we are entirely satisfied with the decree of the district court. It is therefore affirmed.

DECREE AFFIRMED.

THE other Judges concur.