## DETROIT TRUST CO. *v.* GOODRICH.

1. CORPORATIONS — RECEIVER — CREDITORS' SUIT — IMPAIRMENT OF CAPITAL—STATUTES—STOCKHOLDERS' LIABILITY.
    The remedy provided by section 7057, 2 Comp. Laws, enabling creditors to pursue the capital of a corporation, impaired by the unlawful payment of dividends to stockholders, exists also in favor of a receiver appointed in voluntary dissolution proceedings for the benefit of the creditors generally. *Jacobs* v. *E. Bement's Sons,* 161 Mich. 415 (126 N. W. 1043, 137 Am. St. Rep. 508).

2. SAME—STOCK AND STOCKHOLDERS—DIVIDENDS.
    So, also, one class of stockholders injured by impairment of the corporate assets by payment of unearned dividends to another class could compel the corporation to recover the funds unlawfully withdrawn.

3. SAME—RECEIVERS.
    While the receiver represents the insolvent and stands in its place, he has such additional rights as belong to the

creditors to pursue property wrongfully diverted and to enforce all claims for fraudulent disposition of the corporate funds, under the authority conferred upon him by 3 Comp. Laws, §§ 9651, 10861 (5 How. Stat. [2d Ed.] §§ 13570, 14277).

4. SAME—GOOD FAITH—DEFENSES.

The good faith of the corporation in paying dividends that tend to impair its capital or of the stockholders in receiving such dividends, is no defense in a suit to recover them. *American Steel & Wire Co.* v. *Eddy*, 130 Mich. 266 (89 N. W. 952).

5. LIMITATION OF ACTIONS — EQUITY — STOCKHOLDERS' SUIT — LACHES—DIVIDENDS PAID TO IMPAIRMENT OF CAPITAL.

Under the statutes of limitation, a suit to recover from innocent stockholders of an insolvent corporation dividends illegally paid is barred after six years from the date of payment; that some claimants may not have become creditors within that period is not a valid objection, for the right to enforce repayment of the funds received exists in some party at all times after the diversion.

Appeal from Wayne; Hosmer, J. Submitted January 30, 1912. (Docket No. 26.) Decided May 28, 1913. Rehearing denied October 1, 1913.

Bill by the Detroit Trust Company as receiver of E. Bement's Sons, an insolvent corporation, against Louisa A. Goodrich and others for the recovery of dividends unlawfully paid out of capital to preferred stockholders of the insolvent. From an order overruling demurrers to complainant's bill, defendants appeal. Reversed.

*Bernard B. Selling,* for complainant.

*Hyde, Earle & Thornton, Wilkinson, Post & Oxtoby, Edward A. Barnes, Edwin S. Bartlett, Lucking, Emmons & Helfman,* and *Harrison Geer,* for defendants.

The bill in this case is filed for the purpose of compelling the defendants, some 300 in number, to refund

to the receiver certain dividends paid to them by the insolvent corporation, E. Bement's Sons, on preferred stock of that concern, held by them severally.

The allegations of the bill are, briefly: (1) That complainant, a Michigan corporation, was appointed receiver of E. Bement's Sons, a Michigan corporation. That E. Bement's Sons was incorporated under the laws of Michigan in October, 1897, with an authorized capital stock which was increased from time to time until in 1901 or 1902 it amounted to $750,000 preferred and $750,000 common. (2) That the common stock was issued and sold at less than par, and that the preferred stock when issued did not realize par to the corporation. (3) That prior to October 25, 1904, $750,000 par value of the common stock, and $649,000 par value of the preferred stock, had been issued. (4) That after January 1, 1902, the capital stock of E. Bement's Sons was impaired, and that the corporation, subsequent to the said date, had no right to pay any dividends on its stock. That the payment of dividends after January 1, 1902, amounted to a withdrawal and refunding to the stockholders of assets of the company. That although the books of E. Bement's Sons did not show the impairment of capital stock, yet the assets at no time after January 1, 1902, were equal in value to the sum of liabilities of the company and the par value of the stock issued and outstanding. (5) That defendants were and are the owners of preferred stock of E. Bement's Sons and received in dividends thereon dividends from January, 1902, to July, 1904. (6) That the payment of such dividends was a fraud upon the creditors of E. Bement's Sons, and that at the time complainant was appointed receiver there were $100,000 of claims of creditors which were not yet due from E. Bement's Sons, and the owners of which were not in a position to assert at that time the invalidity of the payment of said dividends. (7) That complainant by its ap-

pointment as receiver stands for and in place of all creditors of E. Bement's Sons, whose claims were then in existence, and that the estate of the said corporation will not pay 40 cents on the dollar to the unsecured creditors. That there will be a deficiency of assets exceeding the amount paid in dividends. (The bill contains averments setting forth that there are upwards of 250 stockholders of E. Bement's Sons, who have received dividends amounting in all to upwards of $75,000, and makes all these stockholders defendants.) (8) That the Supreme Court of Michigan has held that no creditor of E. Bement's Sons can take a judgment against said company, but that they must proceed through your petitioner, the receiver. That in October, 1904, the board of directors of E. Bement's Sons filed a petition praying for dissolution of said company and for the appointment of a receiver, in the circuit court of Ingham county, Mich., in chancery, under chapter 300 of the Compiled Laws of 1897. That complainant was in October, 1904, appointed temporary receiver, and in May, 1905, appointed permanent receiver by said circuit court. (9) The complainant prays that defendants be required to account to it for said dividends so received. The bill was filed subsequent to September 1, 1910.

Many of the defendants interposed demurrers based upon the statute of limitations and laches. The demurrer filed by defendant Peters raises the following points: (1) That the complainant's claim is stale and barred by lapse of time in analogy to the statute of limitations at law requiring an action on such claim to be commenced within six years after the cause of action accrued. (2) E. Bement's Sons, a corporation, could not question this payment of dividends, and therefore complainant cannot. (3) Complainant represents no judgment creditor of E. Bement's Sons, who has exhausted his remedies at law against said corporation. (4) Complainant has not pursued the

proper remedy; a special, exclusive, statutory remedy by petition being proper for obtaining the relief prayed. All demurrers were overruled in the court below, and defendants were given 15 days in which to answer. From the order overruling the demurrers, defendants have appealed.

BROOKE, J. *(after stating the facts)*. The bill of complaint contains no averment of fraud on the part of the defendants, nor does it aver that the defendants or any of them received the dividends in question with knowledge or notice that, at the time of payment, the same were paid illegally. Under this pleading, there being no claim of a new promise on the part of the defendants, and more than six years having concededly elapsed between the time of the last payment and the date of commencement of suit, all the defendants urge that the statute of limitations should be held to be an absolute bar to the action.

It should, perhaps, be stated at the outset that this bill is filed following our decision in *Jacobs* v. *E. Bement's Sons,* 161 Mich. 415 (126 N. W. 1043, 137 Am. St. Rep. 508). Jacobs, one of the creditors of the defunct corporation, sought in that case to reduce his claim to judgment with the ultimate purpose, probably, of pursuing his remedy against the holders of preferred stock, who had received dividends paid in impairment of capital. We there held that, the corporation being dead, his action could not be maintained. It was held further—

"That the receiver has full power to reach all assets of the dissolved corporation which could be reached by any creditor, and that such assets ought to be disclosed to such receiver by any creditor who has knowledge of them, for the benefit of all the creditors," citing cases.

The receiver is now in court attempting to enforce

stockholders' liability for the benefit of all the creditors.  2 Comp. Laws, § 7057, provides:

"If the capital stock of any such corporation shall be withdrawn, and refunded to the stockholders before the payment of all the debts of the corporation for which such stock would have been liable, the stockholders of such corporation shall be jointly and severally liable to any creditor of such corporation, in an action founded on this statute, to the amount of the sum refunded to him or them respectively."

It will be noted that this section gives no right to the corporation itself or to its receiver to repossess itself of funds illegally paid out as dividends in impairment of capital, but is solely for the benefit of the creditor.  Nevertheless there can be no doubt that such right exists at common law.  It was said in *American Steel & Wire Co.* v. *Eddy*, 130 Mich. 266 (89 N. W. 952), that:

"We see no reason to doubt that such dividends could be reached, if there were no statute, as being a fraudulent disposition of assets."

It is true the court was there considering the rights of a creditor to pursue such assets, but it seems obvious that if the capital of a corporation is depleted by the payment of unearned dividends to one class of stockholders to the injury of another class, any one of the latter class could by appropriate proceedings compel the corporation itself to recover the funds so unlawfully withdrawn.

As between the corporation and its stockholders, where all stockholders are upon the same footing, the doctrine of estoppel might be invoked, though even then, under the authorities, we think the action could be maintained by the corporation upon the theory of mistake.  See *Lexington Life, etc., Ins. Co.* v. *Page*, 56 Ky. (17 B. Mon.) 412 (66 Am. Dec. 165).

It is said by counsel for defendant that the corporation could not itself maintain the action in this

case, and, as the receiver represents and stands in the place of the insolvent, it is in no better position. We are of opinion that our holding in the case of *Jacobs v. E. Bement's Sons, supra,* forecloses this question against such contention. While primarily the receiver represents the insolvent so far as the collection and conservation of its assets is concerned, in his hands all those claims become assets which were assets as to creditors as well as those which were assets as to the insolvent corporation. In *Minnesota Thresher Manfg. Co. v. Langdon,* 44 Minn. 37 (46 N. W. 310), it is said:

"Among the rights which pass to the receiver as the representative of the creditors is the right to recover property conveyed by the corporation in fraud of its creditors, or capital withdrawn and refunded to the stockholders without provision for full payment of the corporate debts. This right of the receiver does not depend upon any express statute granting it, but rests upon the general equitable doctrine that the capital of a corporation is a trust fund for the benefit of its creditors, and that those to whom it has been refunded will be held trustees for their benefit."

This decision was rendered under a statute conferring express authority upon a receiver to prosecute an action against stockholders on account of any liabilities created by law. Although such authority in express terms is wanting in our statute, we think the powers enumerated in 3 Comp. Laws, § 9651 (5 How. Stat. [2d Ed.] § 14277) and § 10861 (5 How. Stat. [2d Ed.] § 13570), are sufficiently broad to confer the power now sought to be exercised by the receiver. Section 10861 vests in the receiver all the estate, real and personal, of the corporation, for the benefit of the creditors of the corporation and of its stockholders. It cannot be contended that money wrongfully paid out to stockholders as dividends in impairment of capital is not still an asset in a true sense of the corporation itself. The fact that it is a trust fund for the benefit of creditors in the hands

of those to whom it has been so illegally paid does not, in essence, rob it of that quality. We have therefore no hesitation in affirming our former holding that the receiver may, by virtue of its appointment as such, and on behalf of the creditors, maintain the action quite independently of the statute. It is unnecessary here to determine whether the rights of the individual creditor to pursue the fund under the statute are suspended during the bankruptcy proceedings. That question is not now presented.

We think it is settled doctrine that the good faith of the corporation in paying dividends in impairment of capital or that of stockholders in receiving such dividends is no defense to an action for their recovery. *American Steel & Wire Co.* v. *Eddy, supra,* and cases there cited.

The meritorious question in the case is, therefore, to determine when the statute of limitations began to run in favor of these defendants. It will be remembered that the last of the dividends said to have been unlawfully paid were so paid in July, 1904, and the bill of complaint in this case was not filed until October 22, 1910. It is the contention of counsel for complainant that the cause of action did not accrue until the present creditors came into existence and acquired a standing to assail the unlawful payment; that the receiver in prosecuting the action acts as the assignee of, or successor to, the individual rights of each creditor under the statute; and that the time when the fraud was committed is not the period from which the limitation is to be computed, but the time at which the plaintiff acquired the right to attack. On the other hand, defendants urge that the statute commenced to run from the moment of payment; that from such time the money so illegally paid became an asset of the insolvent, recoverable by it in a proper proceeding; and that the receiver is proceeding, not

by virtue of any statutory rights conferred upon creditors, but under well-recognized equitable principles to recover assets of the insolvent which have been wrongfully diverted.

The authorities upon the question are not harmonious, but we are disposed to accept the view presented by the defendants and hold that where unearned dividends are paid to innocent stockholders they cannot be recovered in an action brought more than six years after such payment. The question was carefully considered in *Lexington Life, etc., Ins. Co.* v. *Page, supra,* where it is said:

"Can the stockholders rely upon the statute of limitations to protect themselves against the recovery of these dividends? The only argument that has been urged against their right to avail themselves of the statute is, that the dividends were a part of a trust fund, and should be regarded as having been received by them as such, and held by them as trustees.

"The doctrine is well settled that such express and continuing trusts as are within the exclusive jurisdiction of courts of equity, and are not cognizable at law, are not affected by the statute of limitations.

"But here there was no express trust; if any existed, it resulted by implication, from the facts of the case. The money was received by the stockholders in their own right, as that to which they were legally entitled, and there is nothing which authorizes the inference that they ever agreed to hold it in trust, or claimed it otherwise than as belonging to themselves.

"Besides, the corporation could have maintained an action at law, for the recovery of the money received by them; and a court of equity would have had no jurisdiction to have adjudged its repayment to the corporation.

"If, then, it constituted a trust at all in the hands of the stockholders, it was not an express trust, but received its character from legal implication, and was not such a trust as is within the exclusive jurisdiction of courts of equity, but was cognizable in a court of law, and consequently lacked the essential attributes of those trusts that are exempted from the operation of

the statute"—citing *Dudley* v. *Price*, 10 B. Mon. (Ky.) 84.

Again, in the case of *Hayden* v. *Thompson*, 17 C. C. A. 592, 71 Fed. 60, Judge Sanborn, delivering the opinion of the court of appeals, said:

"This is a suit brought for the benefit of the creditors of this bank, by their proper legal representative, to recover $213,708, which was unlawfully taken out of a trust fund that was sacredly pledged to secure them, and distributed in various amounts among these appellees without consideration. It is a suit in equity to execute a trust, to undo a fraud, and to prevent a multiplicity of suits. * * * It is a suit to execute a trust, for the capital of a bank or other moneyed corporation constitutes a trust fund pledged to secure the payment of its creditors. It is a breach of that trust to divert any portion of this fund from the creditors of the corporation to pay dividends to its stockholders, when it is insolvent, and any funds so diverted may be followed by the creditors, or by their proper representative, and recovered from any one but a bona fide purchaser or a creditor, who has received them. * * * It is a suit to follow and recover a part of the capital of this bank which was wrongfully paid to and received by them. By receiving it they became liable to pay it back to the bank for the benefit of its creditors. This liability to repay this fund was an asset of the bank which passed to the receiver. Under the act of Congress he was vested with the right of the bank, and also with the rights of the creditors of the bank, to recover this fund for the purpose of an equal distribution among the latter. After his appointment he was the proper party to, and the only party who could, maintain a suit for its recovery. *Bailey* v. *Mosher*, 11 C. C. A. 304, 63 Fed. 488, 491; *Bank* v. *Colby*, 21 Wall. [U. S.] 609; *Hornor* v. *Henning*, 93 U. S. 228; *Stephens* v. *Overstolz* [C. C.], 43 Fed. 771; *Bank* v. *Peters* [C. C.], 44 Fed. 13. The act of Congress provides that, under the direction of the comptroller, the receiver shall take possession of the books, records, and assets of the bank, collect all debts, dues, and claims belonging to it, and that, upon orders of the courts, or if necessary, he may take

certain other proceedings. The basis of this suit is a claim of the bank for a part of its capital pledged to, but diverted from, its creditors to these appellees. It was one of the primary duties of the receiver to collect all the dues and claims of the bank. The claim on which this suit is based was one of these claims. * * * This is a suit, we repeat, to recover diverted trust funds. It rests upon no statute or act of Congress. Its foundation lies deeper. It rests on the fundamental principle of equity that he who has received moneys impressed with a trust, without consideration, ought to and must restore them. The right to recover such funds in chancery courts existed long before these acts of Congress were passed, and we find no intimation in them of any intention to destroy or curtail it. * * *

"By the statutes of Nebraska, an action for relief on the ground of fraud is barred in four years after the cause of action accrues, but the cause of action in such a case is not deemed to have accrued until the discovery of the fraud. An action for the recovery of this $120 on any other ground stated in the bill than fraud is barred in four years from the time the cause of action accrues. Consol. St. Neb. 1891, §§ 4547, 4548, 4552. This suit was commenced on July 6, 1894, more than seven years after defendant Hall received his dividend. He filed a general demurrer to this bill. * * * By the terms of these statutes an action to recover this dividend from the defendant Hall was barred more than two years before this suit was commenced; but the counsel for the complainant seeks to escape from this conclusion on three grounds: *First,* that the stockholders who received unearned dividends are trustees of an express trust for the creditors of the bank, and the statute of limitations is inoperative against them; *second,* that the cause of action did not accrue until the fraudulent misappropriation of the dividend was discovered, and the bill alleges that the directors concealed it until the receiver was appointed; and, *third,* that the cause of action did not accrue until the receiver was appointed, and it was discovered that it was necessary to collect this fund in order to pay the creditors of the bank.

"Express trusts are not within the statute of limitations because the possession of the trustee is pre-

sumed to be the possession of the *cestui que trust.*
*Prevost* v. *Gratz,* 6 Wheat. [U. S.] 481, 497; *Lewis* v.
*Hawkins,* 23 Wall. [U. S.] 119, 126; *Railroad Co.* v.
*Durant,* 95 U. S. 576.   But lapse of time is as com-
plete a bar to a constructive or implied trust in equity
as at law, unless there has been a fraudulent con-
cealment of the cause of action.   *Speidel* v. *Henrici,*
120 U. S. 377, 386 (7 Sup. Ct. 610); *Dole* v. *Wilson,*
39 Minn. 330, 333 (40 N. W. 161); *Carrol* v. *Green,*
92 U. S. 509; *Streitz* v. *Hartman,* 26 Neb. 33, 49 (41
N. W. 804); *Insurance Co.* v. *Page,* 17 B. Mon. [Ky.]
412, 447 [66 Am. Dec. 165].   The defendant Hall
never held the dividend which he received under an ex-
press trust to secure the creditors of this bank.   He
never contracted to hold it for them or for that pur-
pose.   He received it as his share of the profits of
the business of the bank, and held it as his own.   The
trust with which it is impressed arises from the fact
that it was taken out of the fund held by the bank in
trust to pay its creditors.   The defendant, who was
*prima facie* its owner, is converted into a trustee by
the evidence of this fact, and the trust is an implied
or resulting trust, created by operation of law, and
not an express trust arising from contract or privity.
The complainant cannot, therefore, escape the bar of
the statute on the ground that it is inoperative against
an express trust.

"Nor can he escape on the ground that the fraudu-
lent misappropriation was not discovered until the re-
ceiver of the bank was appointed.   *   *   *   So far
as this record shows, he received his dividend in good
faith, in the honest belief that he was justly entitled
to it.   The reason of the rule that the time limited by
the statute for the commencement of an action for
fraud shall not commence to run while the defendant
conceals it is that he ought not to be permitted to take
advantage of his own wrong.   Neither the reason nor
the rule has any application to a cause of action which
is fraudulently concealed from the parties in interest
by third persons.   The fraudulent concealment of the
defendant alone will delay the running of the statute.
*   *   *   The result is that an action at law to re-
cover this dividend of $120, which was paid to Hall
in 1886, would have been barred before this suit was
commenced, and by analogy this suit cannot be main-

tained against him. Nor can it be successfully maintained that the cause of action to recover any part of this fund first arose after the receiver was appointed, and when it was first discovered that the other assets of the bank were insufficient to pay its debts. When the fund was misappropriated, the wrong was done, and the right of recovery was complete. The assets of the bank were then insufficient to pay its creditors, if the allegations of the bill that the bank was then insolvent are true, and unpaid creditors might then have maintained a suit to recover back this fund.

"Our conclusion is that, in the State of Nebraska, a suit to recover from an innocent shareholder of a bank an unearned dividend which he has received in good faith, without notice of any fact that would lead a reasonably prudent man to learn that the dividend was not earned, is barred in four years from its receipt."

We have quoted thus at large from the opinion of Judge Sanborn for the reason that it is not only supported by adequate authority, but because we think the argument conclusive of the question.

In *Mills* v. *Hendershot*, 70 N. J. Eq. 258 (62 Atl. 542), which was an equitable proceeding by the receiver to recover *inter alia* dividends paid in impairment of capital, it is said by Vice Chancellor Emery:

"Against defendant Downs there can be no recovery for dividends received more than six years prior to the filing of the bill. He was not an officer of the company, and there is no proof that at the time of the receipt of the dividends before that time he had notice that the dividends were paid out of the capital of the company, instead of the profits. The dividends, when received, were received as his own money, and the receiver can be entitled to their return only on the equitable doctrine that, being in fact paid from the capital, a fund held by the company in trust for the payment of debts, the money received for dividends, being in fact capital, was impressed with this trust. But this trust so raised by the doctrines of the court of equity belongs to the class of implied or construc-

tive trusts, and as to such trusts the general rule is that in the absence of fraud the statutes of limitation are applicable."

We are convinced that, upon principle, as well as authority, the innocent stockholder to whom dividends are paid in impairment of capital should receive the protection of the statute. If his liability to return such dividends does not cease at the end of the statutory period (six years), when does it cease? Clearly not in 10 or even 20 years. He may have received his dividends upwards of 20 years before final insolvency of the corporation, and may even have sold the stock itself, and yet, under the theory of the complainant upon insolvency and the discovery of the fraud or mistake of the officers of the corporation in declaring dividends without having earned them, he could be called upon to refund the money for the benefit of the creditors who became such prior to insolvency. Such a condition would be intolerable and would tend to destroy confidence in corporate investments and to disorganize business. The stockholders, who in good faith receive such dividends, must still hold them as a trust fund for the benefit of creditors, but can only be called upon to refund them if the action is brought within six years from the date of payment.

The cause of action arises at the moment of payment, and the right to enforce repayment exists *in some one* at all times thereafter until the statute shall have run. The fact that some creditor may not have become such within six years of the unlawful diversion has no bearing upon the question.

The order overruling the demurrer is reversed, and the demurrer is sustained.

STEERE, C. J., and MOORE, MCALVAY, STONE, and OSTRANDER, JJ., concurred.