GRAND RAPIDS TRUST CO. *v.* GEER.

CORPORATIONS — STOCK SUBSCRIPTIONS — RECEIVERS — FRAUD MAY NOT BE ASSERTED TO PREJUDICE OF CREDITORS.

Although one who has been induced by fraud to execute a note in purchase of corporate stock may, in an action on the note by the corporation if it is solvent, defend on the ground of fraud, said defense may not be invoked to the prejudice of its creditors who relied upon said note as a capital asset, in an action thereon by the receiver of the corporation which has become insolvent.[1]

Case-made from Kent; Perkins (Willis B.), J.   Submitted January 13, 1926.     (Docket No. 171.)     Decided March 20, 1926.

Assumpsit by the Grand Rapids Trust Company, receiver of the Peninsular Fire Insurance Company of America, against H. R. Geer on a promissory note. Judgment for plaintiff.   Defendant appeals.   Affirmed.

*Horace T. Barnaby (Benjamin T. Smith,* of counsel), for appellant.

*Phelps & Paley* and *Dunham, Cholette & Quail,* for appellee.

CLARK, J.   The facts were stipulated:

"The Peninsular Fire Insurance Company of America was incorporated in the year 1917, under the laws of the State of Michigan.   In 1919, it moved its office from Saginaw, Michigan, to Grand Rapids, Michigan, and increased its capital stock to one million dollars ($1,000,000).   During the years of 1919, 1920 and 1921, it engaged a great number of salesmen to sell this increase of stock to the public.

---

[1] Corporations, 14 C. J. §§ 866, 872.

"2. On the 1st day of July, 1919, the defendant was the cashier of the Farmers Bank at Freesoil, Michigan. On that day defendant purchased 20 shares of stock in the Peninsular Insurance Company at $50 a share and gave $250 in cash as a down payment and his promissory note for $750 with interest at the rate of six per cent. per annum, payable on or before one year from date, to this company.    That is the note upon which this action is based.

"3. After maturity this note was duly presented for payment, which was refused by defendant.    No part of it has ever been paid.    The amount due at this time, therefore, is $750, with interest at six per cent. since July 1, 1919.

"4. After the making of the note it was delivered to the Peninsular Insurance Company and stock for the amount of the subscription was issued but was held by the company as collateral to this note.    The note then became a part of the assets of the company. It was not treated as an admitted asset by the department of insurance, That term, in insurance language, means that it was not such an asset as the State would permit insurance to be written against.    It, however, became a ledger asset and has been carried by the company and its assigns as a note receivable and has been relied upon by creditors as a capital asset.

"5. In 1920 and 1921 the company wrote a vast amount of marine insurance and owing to existing conditions it sustained tremendous losses.    Its condition became such that on the 8th day of January, 1922, Hon. Leonhard T. Hands, commissioner of insurance for the State of Michigan, brought proceedings in the circuit court for the county of Ingham, in chancery, and by an order of that court was on that day appointed custodian or receiver for said insurance company.    The following June, in the year of 1922, Mr. Hands obtained his discharge and turned the company back to its stockholders and officers, believing it to be then in a solvent condition.    In the meanwhile its capital had been reduced to $200,000.

"6. Said company had become insolvent during the fall of 1921, and, as a matter of fact, has never been solvent since.    Its marine losses had accrued prior to the appointment of Mr. Hands but had not been filed at the time the company was turned back in

June, 1922.    Mr. Hands did not know of these claims at that time.    They have been filed since and the company, therefore, was not solvent when turned back and has never been solvent since.

"7. Unable to make any progress, in November, 1924, the directors of the Peninsular Fire Insurance Company of America filed a petition under the statutes for a dissolution of the company in the circuit court for the county of Kent, in chancery, and on December 29th, as above stated, a decree was made dissolving the company, appointing the Grand Rapids Trust Company permanent receiver, with instructions to collect the assets and distribute them to the creditors under the further orders of the court.

"Since that time claims aggregating over $500,000 have been filed with the receiver, more than $300,000 of which are claims for marine insurance losses which actually accrued prior to December 1, 1921. The remainder of the claims have been filed by the creditors who have transacted a general business with the company during the years 1922, 1923 and 1924, and all of them, of course, relied upon the capital assets of this company. The actual assets in the possession of the receiver at this time are approximately $60,000. In addition there are certain contingent claims all of which are involved in litigation. Even if successful in all this litigation the receiver will be unable to pay creditors in full. It therefore has brought this and many similar actions to compel stock subscribers to pay their notes and obligations to the company in order to distribute the funds to be obtained to the company's creditors.

"8. The insurance company prior to receivership had placed the note involved in this suit and other notes in the hands of its attorney who made repeated demand for payment. Defendant made no attempt to rescind his contract of purchase nor had he made any attempt to have his subscription or his note canceled or to cover the down payment.

"9. Defendant now claims that he was induced to enter into the purchase of this stock and to execute his subscription contract by reason of fraudulent representations made by the salesmen of the company. Plaintiff is unable to locate the agent who sold this stock and is consequently at this late date unable to

meet the claim of fraud. It therefore follows that defendant's claim of fraud must be taken by the court as correct. Plaintiff, however, contends that defendant is estopped from now asserting in such claim and that such testimony would be and is wholly incompetent, improper, immaterial and irrelevant to the issue between the receiver and the defendant."

In August, 1925, plaintiff receiver sued defendant on the note. Defendant pleaded that the note had been obtained by false and fraudulent representations of the fire insurance company and its agents. After trial, without jury, the court took plaintiff's view of the law, filed findings, and ordered judgment for plaintiff. Defendant brings error, and insists that the applicable rule of law is that the receiver takes the assets subject to the equities existing between the parties, and that, therefore, he may make his defense against the note; citing *Gray* v. *Lincoln Housing Trust*, 229 Mich. 441, and many other like authorities.

But that rule may not be invoked to the prejudice of creditors of the insolvent. The rule is stated in *Detroit Trust Co.* v. *Goodrich*, 175 Mich. 168 (Ann. Cas. 1915A, 821):

"While primarily the receiver represents the insolvent so far as the collection and conservation of its assets is concerned, in his hands all those claims become assets which were assets as to creditors as well as those which were assets as to the insolvent corporation."

This rule is expressly noted and excepted in the *Gray Case*. Was this note an asset as to creditors? The stipulation of facts shows that "it was relied upon by the creditors as a capital asset," that the claims of creditors, vastly exceeding all remaining assets, were incurred through reliance upon the capital assets of the company, of which this note was a part. If the insurance company, being solvent, had brought this suit, it would seem that defendant might have made

the said defense. But because of the superior and intervening rights of creditors, the defense is postponed to the claims of the creditors. *Matteson* v. *Weaver*, 229 Mich. 495. When defendant discovered the fraud he might have affirmed and sued for his damages, or he might have rescinded and recovered back. He did neither. For years he permitted his note to be treated by the creditors as a capital asset of the company. As against the receiver, seeking to have assets as to the creditors, he is here estopped to assert his said defense. 14 C. J. p. 599; 7 R. C. L. p. 241; 2 Fletcher, Cyc. Corp. § 636; *Foster* v. *Row*, 120 Mich. 1 (77 Am. St. Rep. 565).

Judgment affirmed.

BIRD, C. J., and SHARPE, SNOW, STEERE, FELLOWS, WIEST, and McDONALD, JJ., concurred.